49 So.2d 559

**BOYD v. WARREN PAINT & COLOR CO.**

**6 Div. 994.**

Supreme Court of Alabama.

Dec. 14, 1950.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

688

Caesar B. Powell, of Birmingham, and John M. Barksdale, of Nashville, Tenn., for appellee.

SIMPSON, Justice.

The appellant sued appellee, a nonresident, nonqualifying corporation, on the common counts and for damages for breach of warranty in a contract of sale to appellee of a quantity of paint which was used on a government installation in Columbus, Georgia, and which turned out to be inferior to the guaranteed quality.

The suit was brought in Jefferson County and objection to jurisdiction over the defendant was taken by plea in abatement on the ground that it had not qualified under the laws of Alabama, was not doing business in the county or the state, and therefore was not amenable to process. On the hearing of the evidence before the court, sitting without a jury, the plea was sustained, the suit dismissed, and this appeal taken by the plaintiff from that judgment.

In determining the question, we are not here concerned with state law, since it is not controlling. The issue is regarded in this jurisdiction as a federal question of whether subjection of the defendant to this sovereignty comports with federal due process. Ford Motor Co. v. Hall Auto Co., 226 Ala. 385, 147 So. 603; St. Mary's Oil Engine Co. v. Jackson Oil & Fuel Co., 224 Ala. 152, 138 So. 834. As was said in Ford Motor Co. v. Hall Auto Co., supra: "It is recognized that the federal authorities are controlling on questions entering into the inquiry and ascertainment of the facts (1) of doing business, and (2) of authorized agency on which process must be served, or (3) those of due process, equal protection, and interstate commerce. * * *" 226 Ala. 387, 147 So. 605.

So, the question is whether appellee corporation was amenable to the jurisdiction of the court by reason of its activities in Alabama within the limitations of the due process clause of the Fourteenth Amendment and the authorities governing. We look then to the federal decisions for guidance. Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33, 35.

The character of the business of the corporation and the extent of its activities in Alabama were: The corporation was chartered under the laws of Tennessee as

a mining and manufacturing corporation and manufactured and sold paint throughout the territory; the principal office was in Nashville and it had no designated agent for the service of process in this state; it did have an agent resident in Birmingham, one Pearce, who solicited and took orders for the defendant, subject to acceptance at the home office in Nashville, from various mercantile establishments in Jefferson County and elsewhere in Alabama; when these orders were received at the home office, if acceptable, they would be filled and shipped, usually by common carrier, to the purchaser, but on occasions deliveries were made in company trucks. Pearce had no authority to approve credit or to make contracts for the defendant, but at times if a dispute arose between a customer and the defendant on orders previously sold by the Alabama salesmen, he would make investigation of the matter and report to the defendant, after which usually the defendant would correspond directly with the complaining customer, sending copy to the salesman, who sometimes would also make the same report to the customer. Pearce had no original authority to make any settlement with any customer unless the matter had been first investigated and approved by the home office, his duties in this regard being to investigate the complaint and report results to the defendant. Pearce worked for no one else; this was his sole employment, his remuneration being a fixed salary, expense money, and five per cent commissions on excess sales. One mercantile establishment in Birmingham, First Avenue Roofing Company, purchased defendant's products for resale and agent Pearce made actual completed sales in Alabama of these products for the Roofing Company "as a part of his job" working for the defendant corporation. In addition to the Jefferson County customers, the defendant had some thirty or forty additional customers in Alabama and probably two more salesmen, who presumably worked somewhat like the Jefferson County agent. It is therefore to be deduced from the evidence: (1) the defendant had a resident agent and employee in Alabama, who regularly and systematically conducted transactions for the defendant during a period commencing approximately one year prior to the suit and service of process (December 21, 1948) and continuing up to the time of the trial on the plea in abatement (June, 1949); (2) the activities of this agent consisted in solicitation of orders from Alabama customers of defendant, and the forwarding of such orders to the home office in Nashville; (3) this agent, as a part of his employment, also made actual completed sales in Alabama of the corporation's products which had been previously sold to the roofing company; (4) averaging about once a month from about December 21, 1948, and thereafter defendant would ship a truckload of paint to customers in Alabama in its own trucks on both cash and credit sales, thus delivering its products in this state; (5) agent Pearce was intermittently given authority to investigate complaints from Alabama customers and on occasions was instructed, after investigation and decision by the defendant, to communicate to the customers the decision of the defendant as regards adjustment of the complaints.

Were these activities sufficient to manifest the "presence" of appellee in this state to render it amenable to jurisdiction of the state courts within the rule of the federal cases?

■■ It is, of course, recognized that a state may not make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations, that is, where the defendant is not present in the state. But since a corporation must act vicariously and its presence in the state can only be manifested by the acts of its authorized agents, the question is to be determined by the activities of those agents and the character of business done. And each case must depend on its own facts. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

It is the contention of appellee that Pearce's activities and the business done

in connection constituted no more than "mere solicitation" of business and under the controlling authorities, was not sufficient to bring it within the reach of judicial process in the instant case where a judgment *in personam* is sought.

But the traditional theory, thought to be crystalized in federal jurisprudence, that personal jurisdiction over a foreign corporation cannot be acquired when the only basis is "mere solicitation" of business within the borders of the forum's sovereignty, Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; International Harvester Co. v. Commonwealth of Kentucky, supra; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537, seems to be no longer controlling. Recent federal decisions have considerably impinged upon that concept. International Shoe Co. v. State of Washington, supra; United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 92 L. Ed. 1091; Bomze v. Nardis Sportswear, Inc., supra; Kilpatrick v. Texas & Pac. Ry. Co., 2 Cir., 166 F.2d 788; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 684(2). Cf. also Frene v. Louisville Cement Co., 77 U.S.App. D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926.

■ The rule that we deduce from these late decisions, of which International Shoe Co. v. State of Washington is the "bellwether," is that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in a continuous flow of appellant's products into the state, is sufficient to constitute doing business in the state so as to make the corporate defendant amenable to suits in its courts, provided there be included in the inquiry the factor of estimating the inconvenience which would result to the corporation from a trial away from its home. International Shoe Co. v. State of Washington, 326 U.S. 316-317, 66 S.Ct. 154, 90 L.Ed. 95; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, 185.

The theory was thus rationalized by Chief Justice Stone in the International Shoe Co. case:

" * * * the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. * * *

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. * * *

* * * * * *

" * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contact, ties, or relations. * * *

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * * " 326 U.S. 316-317, 319, 66 S.Ct. 158-160, 90 L.Ed. 95.

The court then concluded: "Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. * * *" 326 U.S. 320, 66 S.Ct. 160, 90 L.Ed. 95.

The criticism of Mr. Justice Black in his dissenting opinion that the court "has announced vague Constitutional criteria applied for the first time * * * has thus introduced uncertain elements confusing the simple pattern", also indicates the adoption of a new theory and a trenchment on the "mere solicitation" rule. Such, likewise, is the construction placed on the majority opinion by Judge L. Hand, Second Circuit Court of Appeals, in the Latimer case, supra, to the effect that in order that a foreign corporation may be said to be present within another state so as to be subject to its jurisdiction, it need only appear that the corporation's regular activities have been continuous and that subjection to local jurisdiction will not unduly inconvenience it.

The defense of "mere solicitation" was interposed in the International Shoe Company Case to debar the Washington court of jurisdiction over the nonresident corporate defendant, but as we read the opinion of Chief Justice Stone that theory was discarded. Indeed, the case of United States v. Scophony Corp., supra, decided some two years later, so construed it. Though the court in the Scophony Case had under consideration the analogous question of venue, it was dealing with a somewhat similar principle. The court said: "* * * the Court sloughed off the highly technical distinctions theretofore glossed upon 'found' for filling that term with particularized meaning, or emptying it, under the translation of 'carrying on business.' In their stead it substituted the practical and broader business conception of engaging in any substantial business operations. Cf. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511; International Shoe Co. v. State of Washington, supra. Refinements such as previously were made under the 'mere solicitation' and 'solicitation plus' criteria, cf. Frene v. Louisville Cement Co., supra, and like those drawn, e. g., between the People's Tobacco and International Harvester cases, supra, were no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue." 333 U.S. 807, 68 S.Ct. 861, 92 L.Ed. 1091.

The other federal cases cited above (and there are others) hold similarly. For instance, in Steinway v. Majestic Amusement Co., supra, it was said: "These cases [Shoe Company and Scophony] do indicate a definite disposition to broaden the concept of 'engaging in business' to include mere solicitation, if it is sufficiently continuous to amount to a course of business." 179 F.2d 684.

This new rule, as observed in the Shoe Company case, seems to be based on "traditional notions of fair play and substantial justice", so that the doing of business by the corporate defendant in a nonresident state so as to justify subjecting it to suit is measured by the extent of its activities and the question vel non of the fairness as against the inconvenience to the defendant of requiring trial away from its home. The fictional concepts of "presence" and "submission or implied consent" seem to be merely admeasurements of this justification.

Under this inquiry, as we read the decisions, there would be subsumed the question of whether the action was based on a liability arising out of the local activities, it naturally being less burdensome to subject a corporation to defense of actions so

692

arising than those arising elsewhere. As stated by Judge Hand in Bomze v. Nardis Sportswear, Inc., supra, 2 Cir., 165 F.2d 35-36: "* * * probably some such notion is at the basis of those decisions which permit a state to subject to process in personam transients who, while within its borders, have incurred a liability under its laws", citing Kane v. State of New Jersey, 242 U. S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, and other cases in note 11, p. 36.

■ Applying these principles, we hold defendant to be subject to jurisdiction. The liability arose out of the exercise by the defendant of its corporate functions within the state. The alleged delict itself, the breach of warranty in the furnishing of defective paint to the plaintiff, on orders taken by defendant's agent, occurred within these borders. These regular and systematic solicitations of orders resulting in the flow of appellant's product into the state, we think, under the federal decisions, constitute doing business within the state and bring it within reach of judicial process, permissible under the Fourteenth Amendment.

We realize that we are at a disadvantage in seeking to appraise exactly what the holding of the Supreme Court of the United States might be on this question, but the interpretation we place upon the federal decisions is such as to impel us to the conclusion reached.

So considered, the judgment should be reversed.

■ This is dispositive of the appeal. We do not reach the question of whether or not process was served on a proper agent of the defendant, since no pleading was interposed to invoke a ruling in regard thereto, nor was any ruling made. True, we have approved the practice of permitting pleas in abatement to test the validity of the service of process where invalidity does not appear on the face of the proceedings. Harwell v. Lehman, Durr & Co., 72 Ala. 344; Campbell v. Crawford, 63 Ala. 392; Louisville & N. R. Co. v. Barker, 96 Ala. 435, 11 So. 453. But the plea in abatement must be of that character which challenges the validity of the service. Here, though

the plea does purport to contain allegations of fact which would seem to go to the validity of service of process, the plea itself is in essence one exclusively to abate the suit on the ground of lack of jurisdiction of the cause. The judgment of the court was responsive to this plea and the other proposition is not before us for consideration.

Reversed and remanded.

All the Justices concur except GARDNER, C. J., not sitting.