252 So.2d 45

**CITY STORES COMPANY, a Corporation, et al.**

v.

**Mary Ellen WILLIAMS.**

4 Div. 390.

Supreme Court of Alabama.

June 10, 1971.

Rehearing Denied Sept. 9, 1971.

Frank W. Riggs, III, Richard H. Gill, Montgomery, for appellee.

Rushton, Stakely, Johnston & Garrett, Henry C. Chappell, Jr., Montgomery, for appellants.

HARWOOD, Justice.

City Stores Company, a Delaware Corporation, operates a business in Montgomery under the name of Loveman's. The business so operated is the buying and selling of merchandise as a department store.

On 26 December 1967, an agent or agents of Loveman's procured the issuance of a warrant in the Municipal Court of the City of Montgomery charging the appellee here with grand larceny. The alleged offense occurred in Loveman's store. It is inferable from the record that a preliminary hearing on the charge was waived and the appellee was bound over to await the action of the grand jury of Montgomery County. In May 1968, that body returned a "no bill."

Thereafter the appellee filed a complaint in the Circuit Court of Pike County naming City Stores, and three individuals, M. H. Brown, W. T. Thornton, and Ann Welch, as defendants. These three individuals worked as security guards for Loveman's.

It was stipulated that the individual defendants were not residents of Pike County, and had never done business therein.

It is therefore apparent that jurisdiction over the individual defendants was dependent upon whether venue of this cause was properly in Pike County as concerned Loveman's, the individual defendants having been brought in by branch summons as provided in Section 185, Title 7, Code of Alabama 1940. See also Ex parte Western Railway of Alabama, 283 Ala. 6, 214 So.2d 284.

The complaint claimed damages for unlawful arrest and imprisonment for three hours (Count 1), and for malicious prosecution (Count 2).

All of the defendants filed pleas in abatement, which after hearing before the judge without a jury, were overruled.

Trial was then had on the merits and the jury returned a general verdict in favor of the plaintiff and assessed her damages at $32,000. Judgment was entered pursuant to the verdict.

The defendants filed motions for new trials which after hearing were overruled. Appeal from the judgment was then perfected by the defendants below. For convenience, we will hereinafter refer to the appellants as the defendants, and the appellee as the plaintiff, the positions they occupied in the proceedings below.

Defendants' assignment of error No. 11 asserts that the trial court erred in denying defendants' pleas in abatement, and assignment of error No. 23 asserts error in the action of the trial court in denying defendants' motions for a new trial. Grounds 1 and 2 of the motions for a new trial, brought forth and argued in defendants' brief, are:

"1. For that the court erred in overruling and denying defendants' plea in abatement * * *.

"2. For that the said ruling of the court on defendants' plea in abatement is contrary to the evidence presented thereon."

We therefore will first consider the threshold question of the court's ruling on the pleas in abatement.

Section 232 of our Constitution of 1901 provides in parts pertinent to this review:

"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. *Such corporation may be sued in any county where it does business, by service of process upon*

*an agent anywhere in the state. \* \* \*"* (Emphasis ours.)

Section 60 of Title 7 is found in Article 1 of Chapter 3, Code of Alabama 1940. Chapter 3 is entitled "Venue," and Article 1 thereunder is entitled "Venue of Actions."

In parts pertinent to this review, Section 60 of Title 7, Code of Alabama 1940, provides:

"A foreign corporation may be sued in any county in which it does business by agent or was doing business at the time the cause of action arose."

In Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 So. 941, the difficulties experienced by the courts in resolving the question of jurisdiction over foreign corporations doing business in the state, and the power of a court to render a valid judgment against such corporations under such circumstances, prior to the enactment of constitutional and statutory provisions clarifying such jurisdictional questions, is thoroughly discussed, historically and procedurally. In that opinion the court appears to have considered the progenitor of Section 232 of our present Constitution, which progenitor was in verbiage the same as Section 232, as relating to jurisdiction.

In Pepperell Mfg. Co. v. Alabama National Bank, 261 Ala. 665, 75 So.2d 665, it was pointed out, however, that in a considerable number of our cases Section 232 has been treated as a venue provision and such connotation cannot now be questioned.

The court further observed:

"The terms 'jurisdiction' and 'venue' are often confused and loosely used. In its pure sense 'jurisdiction' means the power of a court to entertain and consider a cause, and render a binding judgment therein. 'Venue' refers to the court in which for the sake of convenience or policy considerations the cause is to be tried. Pepperell Mfg. Co. v. Alabama National Bank, 261 Ala. 665, 75 So.2d 665."

In its broadest sense and considering its historical background, Section 232 in its origin would appear to be concerned primarily with jurisdiction over a foreign corporation rather than the venue of an action, though the inclusion of the words in Section 232, that a foreign corporation may be sued "in any county where it does business" partakes of venue.

The loose use of "venue" and "jurisdiction" appear to result from the fact that in many of the cases the foreign corporation had qualified to do business in the state, or unquestionably was doing business in the state without qualifying to do so. No question of jurisdiction was really involved, only that of venue.

Since City Stores (Loveman's) was qualified to do business in Alabama and had a principal place of business in Montgomery, there can be no question of jurisdiction over the corporation. We think, therefore, that the question here presented is one of venue rather than jurisdiction.

If it were a question of jurisdiction, federal authorities would be controlling on the question of what constitutes "doing business." Ford Motor Co. v. Hall Auto. Co., 226 Ala. 385, 147 So. 603; Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559. We are aware of the doctrines articulated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, to the effect that only a minimal contact or nexus by a foreign corporation with a state is sufficient to satisfy the due process requirements of the United States Constitution on the question of jurisdiction.

We pretermit consideration of whether Mulvaney's status with Loveman's and his single visit to Pike County under the hereinafter described conditions, were sufficient even under a jurisdictional concept, this for the reason that we are here concerned with venue. In other words, we deal with a problem arising under our

venue statute, and not with a problem of constitutional import. See United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.

In *Scophony*, supra, the United States Supreme Court was considering a question of venue. The court pointed out that for venue purposes prior federal decisions had sloughed off the technical glosses surrounding the terms "found" and "carrying on business" and in their stead had substituted the practical and broader business conception of engaging in any substantial business operation.

We note here that even in those federal cases which seem to indicate a definite disposition to consider mere solicitation by a foreign corporation to be a sufficient connection with a state on which to base jurisdiction, such solicitation must be sufficiently continuous as to amount to a course of business. See Steinway v. Majestic Amusement Co., (10 CCA) 179 F.2d 681.

At the hearing below in support of their pleas in abatement, the defendants presented three witnesses, Arnold D. Unger, manager of Loveman's in Montgomery, William Schuchman, manager of the home furnishings department of Loveman's in Montgomery, and Frazier C. Raines, a deliveryman for the company. The plaintiff presented one witness, Edgar J. Mulvaney.

Unger testified that his first association with Loveman's in Montgomery began as manager in March 1968. Loveman's has no store, outlet, or resident agent in Pike County. The business of Loveman's in Montgomery is the buying and selling of merchandise.

The company advertises in Montgomery newspapers and over a Montgomery television station. People from outside of Montgomery County trade at Loveman's.

Purchases are sent to out of town customers by parcel post and by Loveman's delivery trucks.

Through Unger, the records of Loveman's showing shipments by parcel post, and deliveries by Loveman's trucks of merchandise purchased in the Montgomery store and sent to Pike County, for the period September 1968 through February 1969, were received in evidence. There were 48 such parcel post shipments, and 8 deliveries by truck, and 2 "pick ups" of merchandise to be returned.

Plaintiff further showed that Loveman's advertised in Montgomery newspapers and over a Montgomery television station, and such medium reached surrounding counties.

Largely, however, plaintiff's efforts to show that Loveman's did business in Pike County by agent was concerned with the sale of carpeting.

In this connection Unger's testimony on direct and cross-examination tended to show that Loveman's records fail to show any sales of carpets in Pike County.

He further testified that in the sale of carpets, if a customer knows the measurements of carpeting desired, that measurement is accepted and the sale is made. If the customer does not know the measurements, a salesman will be sent to make the measurements, and thereafter when the customer comes back to the store and credit is approved, the sale is made in the store.

A salesman who goes out to measure for carpets has no authority to complete a sale in the customer's home, or do anything other than to make measurements. Should a salesman persuade a customer that a higher grade of carpet, or one of a different color should be used, he could do so, but all such sales are "finalized" in the store.

Loveman's does not install carpeting. However, the Jefferson Carpet Company in Montgomery specializes in laying carpets. Jefferson is in no way connected with Loveman's. If the customer desires, Loveman's will arrange with Jefferson to lay

carpets. The customer pays Loveman's Jefferson's charges, and in turn Loveman's pays Jefferson. The customer himself can arrange for the installation of the carpet if he desires.

Jefferson is liable for its work, but if a mistake were made by it, the customer would call Loveman's who in turn would call Jefferson to take care of the problem. Jefferson does work for others than Loveman's.

As to delivermen, they are authorized only to deliver merchandise. In case of an appliance such as a refrigerator or stereo, the deliveryman will place the appliance in the location desired by the customer. If the customer requests, the deliveryman will plug in the appliance. In the event the appliance does not function properly, the deliveryman has no authority to make any adjustments. In such a situation if the customer refuses to accept the appliance, the deliveryman can return it to the store.

Unger further testified that the operations of Loveman's were the same on the day the suit was filed as it had been during his connection with the store.

William Schuchman, manager of the home furnishings department of Loveman's since September 1967, which department handles the sales of carpets, draperies, furniture, and appliances, testifed that in the sale of wall to wall carpeting a salesman will go to the home of the customer to measure. The price is agreed upon when the customer initially comes into the store, or sometimes after the measurements are made.

Because of the high cost of carpeting, sales are usually on a time basis. Also a waiting period of about three weeks is involved because the carpeting is obtained from the mill or the Loveman's store in Birmingham.

So far as Mr. Schuchman could remember there has never been, during his service with Loveman's, a cash sale of a carpet in Pike County, nor could he recall any instance where a salesman had gone to Pike County to measure for a carpet.

After a measurement is taken, the price quoted on a carpet includes installation costs, though if the customer desires that someone else install the carpet that is up to him.

Ordinarily Jefferson Carpet Service, which is in no way connected with Loveman's, will install the carpet. The remaining portion of Schuchman's testimony as to the installation of carpeting by Jefferson Carpet Company was in all material respects the same as Unger's.

Frazier C. Raines, a deliveryman for Loveman's testified that his duties consisted of delivering merchandise from Loveman's to a customer.

If the merchandise is in the condition the customer expects, the customer will receive and sign for it.

If the merchandise is in a carton, he will remove it, and in cases of furniture or an appliance, he will place the article where the customer requests. If an appliance, he will plug it in, but he does not service or adjust any appliance. If it should not work and the customer does not want to receive it, he will bring it back to the store.

In the course of his work he does not solicit orders or make any sales, nor could he recall ever being given any instructions as to his work other than merely to deliver merchandise.

On examination by the court, Raines testified that he has made C.O.D. deliveries out of Montgomery. In such event he gives the money to his supervisor who in turn takes it into the office where the payment is entered on the books.

He could not recall ever having made a C.O.D. delivery in Pike County.

For the plaintiff, Edgar J. Mulvaney testified that he was formerly employed by Loveman's as a salesman in the home furnishing department. His employment cov-

ered a period from December 1967 to July 1968, when he was discharged for cause, i. e., using a company vehicle for personal use. Mr. Schuchman was his immediate boss.

As to the sale of carpeting, normally "a person would come into the store and look at samples and then you would have to go to the home to measure * * * You would take measuring equipment and carpet samples into the home and measure for carpet and show them samples, and hopefully close the sale." He would take a sales contract with him, and hopefully write a sales contract in the home.

As to his activities in Pike County, Mulvaney testified:

"I came once into Pike County to my knowledge to measure for a carpet job. I did not get this particular job. I brought samples and measured but I did not get this job."

Mulvaney did not remember the date he went to Pike County. A Loveman's truck was going to Troy to make deliveries and he caught a ride on it as he did not have other transportation. He then went to Brundidge and measured for a carpet. He did not remember the name of the people for whom this measurement was made. *No one at Loveman's told him to make this trip, and no record was made of it other than a personal record.*

When asked what was Loveman's policy as related to either sitting in the store and waiting for a customer to come in or if you "heard of somebody" going to see him, Mulvaney replied:

"Any good salesman's policy is if you know of a sale anywhere go and get it; tantamount to making a living. You are not necessarily sitting and waiting for them to come in, if you know of someone that came in and you happened to talk to them, you might go solicit them."

When again immediately asked what was Loveman's policy in this respect, Mulvaney replied:

"I don't know of any particular policy Loveman's had on it other than there was nothing against it."

Mulvaney further testified that he went to Prattville in Autauga County several times to see people about the sale of carpets. *No one at Loveman's told him to make these trips to Prattville.* "The customer would come in and look at carpets and I would set up an appointment with him and go out there and fulfill my appointment as doing my job. No one said to go." Most of Mulvaney's time was spent on duty in the store in Montgomery.

The testimony presented by the defendants in support of their pleas in abatement was ample in its tendencies to support the pleas.

The questions therefore arise as to whether the testimony of Mulvaney is of sufficient probative value to show that Loveman's was doing business in Pike County at the time suit was brought and service had, and whether Mulvaney was acting as Loveman's agent on his trip to Pike County.

■ The burden of proving agency rests upon the party asserting it. Warrant Warehouse Co. v. Cook, 209 Ala. 60, 95 So. 282; Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8.

The only reasonable inference that can be drawn from the evidence is that Mulvaney was employed as a salesman in the home appliance department of Loveman's store in Montgomery.

■ An agent employed for a specific purpose is a special agent and the fiduciary relationship of principal and agent applies only to the acts within the agreement. Caldwell v. Caffey, 269 Ala. 543, 114 So.2d 560.

■ Mulvaney's trip to Pike County was not authorized by Loveman's. Since Loveman's apparently was not informed of Mulvaney's trip, there can be no question of ratification. To hold that under the facts

as shown even by Mulvaney's testimony that he acted as agent for Loveman's in Pike County would be pressing beyond permissible limits any application of the doctrine of general agency.

Furthermore, the only evidence of any purported agency of Mulvaney in Pike County must be deduced solely from his testimony. There is no other evidence of probative value directed toward this point. As stated in Wilson & Co. v. Clark, 259 Ala. 619, 67 So.2d 898:

> "There are some authorities to the effect that declarations of the agent are never admissible to prove the agency. This rule, however, is not adhered to in all its strictness by the more recent decisions of this court.

> "The rule is that acts and declarations of one whose agency is the subject of inquiry, though incompetent when there is no other evidence of agency or of ratification, become competent for consideration in determining both the fact of agency and the scope of authority originally given, when shown in connection with other evidence of agency." (Numerous citations omitted.)

We can find nothing in Mulvaney's testimony tending in anywise to show his agency in the Pike County transaction. His testimony merely shows that he was employed by Loveman's as a salesman in the home appliance department of the store. Under the rules above stated, the testimony of Mulvaney tending to show his agency in Pike County, was incompetent and was not rendered competent by any other or additional evidence.

■ State v. West Point Wholesale Grocery Co., 284 Ala. 149, 223 So.2d 269, dealt with the recovery of franchise taxes, a permit tax, and an admissions tax levied against the grocery company as a foreign corporation doing business in Alabama. This court held that subsequent delivery of ordered goods in company trucks from Georgia into Alabama, and mere collection

by agents in Alabama for goods sold, was insufficient to supply a minimum connection between Alabama and the grocery company authorizing the assessment of the taxes. By analogy such activities by Loveman's were insufficient to create venue in Pike County for this suit. Nor was this deficiency remedied by the fact that Loveman's advertised in a Montgomery newspaper and over a Montgomery television station, which media reached surrounding counties. Such activities were nothing more than a communication to the general public seeking to have them trade at Loveman's. It was merely a solicitation of business to be consummated in Loveman's store in Montgomery. Such advertising without more did not constitute doing business in Pike County. See Miller Bros. Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744.

■ While a favorable presumption attends a trial judge's findings on disputed evidence heard orally, no such presumption attends the trial court's findings where his conclusion rests on facts indisputably established, nor where the trial court has taken an erroneous view of the law as applied to such facts. Smith v. McCain Boiler & Enginerring Co., 284 Ala. 618, 227 So.2d 131.

Because of the reasons set forth above, we hold that the defendants' evidence supported their pleas in abatement, and the plaintiff's evidence on this question did not make a substantial conflict in the evidence, and was not sufficient on which to hang venue, in that it was not sufficient to show either that Mulvaney was Loveman's agent or that his activity in Pike County amounted to doing business therein.

Defendants' assignments of error 2 through 9 assert error in the action of the court in overruling defendants' objections to a number of specific questions relative to Mulvaney's sales attempt in Pike County.

Assignment of error 10 relates to the action of the court in denying defendants'

motion to exclude Mulvaney's testimony made at the conclusion of his testimony.

The bases of the objections both to the questions, and in support of the motion to exclude, were that Mulvaney's activities related to his activities prior to the time of the filing of the suit.

At the outset of the series of questions to Mulvaney to which objections were interposed, the court stated:

"Yes, I know what the rule is, at the time suit was filed. * * *"

And further, after counsel for defendants had again elucidated his grounds of objection:

"That may be true but he might have witnessed a delivery on the date this suit was filed in Pike County."

There was no testimony during Mulvaney's appearance as a witness that he had witnessed the doing of anything on Loveman's part in Pike County, other than might grow out of his one trip to Pike County.

In Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510, it is stated in reference to Section 232 of our Constitution:

"The Constitution is self-executing, mandatory and restrictive; *limits the venue of an action against a foreign corporation* which has qualified to do business in Alabama to a county where the corporation *is doing business at the time of suit brought and service had.*" (Emphasis ours.)

Certainly in *Bolton* the activities of the corporation agents were far more substantial than in the present case on which venue is sought to be based.

To the same effect see also General Motors Acceptance Corp. v. Home Loan & Finance Co., 218 Ala. 681, 120 So. 165; May v. Strickland, 235 Ala. 482, 180 So. 93; Ex parte Kemp, 232 Ala. 434, 168 So. 147.

The present suit was filed on 23 December 1968. Actually no service of the complaint is shown by the record. Mulvaney's employment with Loveman's ceased in July 1968, some five months more or less prior to the filing of the suit.

If an unwarranted concession be indulged that Mulvaney was Loveman's agent on his trip to Pike County, and that he engaged in business for Loveman's on that trip, there yet remains a five month gap between Mulvaney's actions and the date of the suit.

Over defendants' objection Mr. Unger, who had been manager of Loveman's in Montgomery from March 1968, testified that the operations of Loveman's were the same on the day suit was filed as it had been since his first connection with Loveman's.

On this basis counsel would overcome the hiatus between the conclusion of Mulvaney's employment and the date of the filing of the suit by asserting that Unger's testimony as to Loveman's operations showed that Loveman's was doing business in Pike County on the date suit was filed.

The fallacy of counsel's argument is that Unger's testimony contradicted any conception that Loveman's operations at any time were such as to constitute doing business by agent in Pike County.

Under the rule stated in Bolton v. White, supra, and the other cases cited, the lower court erred in denying the defendants' motion to exclude Mulvaney's testimony.

Assignments of error 2 through 10 furnish additional reasons necessitating a reversal of this judgment.

Many additional errors are assigned by the defendants. Largely these errors relate to rulings occurring in the trial of this case on the merits. Since we are clear to the conclusion that this judgment must be reversed because of error permeating the lower court's ruling overruling defendants'

pleas in abatement, we see no useful purpose in discussing these assignments.

Reversed and remanded.

SIMPSON, MERRILL, COLEMAN, BLOODWORTH, and McCALL, JJ., concur.

LAWSON, J., concurs in result.

HEFLIN, C. J., dissents.

HEFLIN, Chief Justice (dissenting).

In my opinion, the trial judge should not be reversed for overruling the plea in abatement concerning venue.

A part of the testimony of the witnesses for Loveman's was directed towards the policy or operation of the company concerning its agents or employees selling outside of the store in Montgomery. Such witnesses testified that its salesmen, agents and employees had no authority to make sales or even to solicit or perform services outside of the store building with only a few rare exceptions. Mr. Unger, the manager of the store in Montgomery, stated that such policy or operation was the same throughout the entire time that he had been connected with the store. Mr. Mulvaney (the witness for the appellee-plaintiff) was employed during a period of four months while Mr. Unger was manager. Mr. Mulvaney's testimony about the policy or operation concerning salesmen outside the store and throughout South Alabama, including Pike County, was in direct conflict with the testimony of said manager of the store. This part of Mulvaney's testimony concerned the policy about salesmen, not what his individual authority was. It was also rebuttal evidence. Thus, the trier of facts had the right to determine the policy of the appellant-defendant corporation pertaining to its salesmen outside the Montgomery store and in Pike County.

Mulvaney testified that such policy was, in effect, the same as any good salesman policy; that if a salesman knew of a sale anywhere, he goes out and gets it; that a salesman would not necessarily be sitting around and waiting for customers to come into the store; that if a prospective customer came in the store and displayed an interest, the salesman could solicit the prospective customer outside the store. This testimony was in direct conflict with what Mr. Unger, the manager, had stated, pertaining to the policy. Mulvaney testified that there was no policy prohibiting a salesman from going outside the store and soliciting. Unger testified that there was. Mulvaney was asked if the company had any particular policy pertaining to salesmen's authority. He answered that he didn't know of it other than the fact that there was no policy against soliciting business outside of the store.

The matter of records should also be considered. The trier of facts could conclude from the testimony of Mulvaney that no company records of visits in prospective customers' homes were made pertaining to solicitations of sales where no sale was made. Such a conclusion is supported by inferences from the testimony of appellants' witnesses.

Mulvaney was employed in the Home Furnishings Department which involved the sale of carpets, draperies, furniture and appliances, including TV sets. In connection with the sale of carpets, Mr. Mulvaney testfied that he would show carpet samples and measure for carpets in the prospective customer's home and hopefully close the sale at that time. He stated he carried written contract forms with him and that if the sale was made, the contract would be signed there in the home. This was in conflict with the testimony of the witnesses for appellants.

The manager of the Home Furnishings Department, William Schuchman, testified concerning the activities of salesmen in his department, among other things. He stated that salesmen would go into prospective customers' homes, make measurements, and

give assistance as to information concerning color and grade of carpets. He testified that this would be true in Pike County and any other county *where Loveman's did business*. He also testified that the business of advising on the grade and color of carpets is part of a sale. He testified that it was the policy of Loveman's that if anyone came in from Troy and wanted assistance in the installation or selection of draperies and carpets that Loveman's would send someone down to Troy to assist him in the selection. He testified that this would be true of any county in South Alabama.

Schuchman was asked if he had ever sent a salesman into Pike County to measure for carpet. He stated he couldn't answer that. The trial judge could have concluded that there was an absence of proof in this connection even in view of later testimony by Schuchman that he didn't remember sending a salesman into Pike County.

It is important to remember that the burden of proof on a plea raising the question of venue is upon the defendant corporation. Section 60, Title 7, Code of Alabama 1940; Southern Guardian Life Insurance Co. v. Freeman, 283 Ala. 429, 218 So.2d 143; 16 Ala.Digest, Pleading ⊕111.39; Johnson Publishing Co. v. Davis, 271 Ala. 474, 124 So.2d 441, and cases cited therein.

In addition to the matters that we have set forth, there was testimony that an essential part of the business of selling merchandise was the delivery service. There was testimony that Loveman's had regular scheduled deliveries into Pike County on Wednesday of each week. Other activities of the appellants affecting Pike County are set out in the majority opinion.

The trial judge had the opportunity to observe the demeanor of the witnesses. Certainly a trier of facts had the right to determine the credibility of evidence including the testimony that the only thing a TV deliveryman did was to plug in the TV set and he could not make any adjustments on it.

Bearing in mind the conflicts in testimony, the absence of proof, the burden of proof, the evaluation of the creditability of the witnesses, and the evidence of the activities of the appellants in and affecting Pike County, I feel the trial judge did not abuse his discretion in overruling the plea in abatement. I would affirm on this issue.