344 So.2d 156 (1977)
In re TUSKEGEE INSTITUTE, a corporation,
v.
MAY REFRIGERATION COMPANY, INC., et al.
Ex parte MAY REFRIGERATION COMPANY, INC.
SC 1858.
Supreme Court of Alabama.
January 14, 1977.
Rehearing Denied February 25, 1977.
*157 Michael I. Kent, Opelika, for petitioner.
Fred D. Gray, Tuskegee, James Larry Lester, John S. Glenn, Opelika, for respondent.
MADDOX, Justice.
May Refrigeration Company installed an air conditioning unit at Tuskegee Institute, but was never paid for it. Nevertheless, Tuskegee kept the unit and used it. May filed suit against Tuskegee and its agents. A jury awarded May $2,975 [1] compensatory damages, and $3,500 punitive damages. Tuskegee appealed, and the Court of Civil Appeals reversed, holding that the evidence was insufficient to show that any employee of Tuskegee had actual or apparent authority to bind it. A fuller statement of the facts may be found in the opinion of the Court of Civil Appeals at 57 Ala.App. 344, 328 So.2d 598 (1976). We granted certiorari, primarily to review the question of ratification, an issue not addressed in the opinion of the Court of Civil Appeals, but an issue which was presented in the case as is apparent from a reading of the opinion of the Court of Civil Appeals. May did not request the Court of Civil Appeals, pursuant to Rule 39(k), Alabama Rules of Appellate Procedure, on application for rehearing, to add or correct the facts in its opinion on rehearing. May, apparently thinking it should have made the request, asked this Court to suspend the Rule 39(k) requirement and permit it to raise the question of ratification here. Because we can determine from a reading of the facts which are set out in the opinion of the Court of Civil Appeals that ratification was, in fact, an issue, the motion to suspend was not necessary.
A look at the record for a better understanding of the facts shows that the pre-trial order, which controls "the subsequent course of the action" (Rule 16, ARCP), reads, in pertinent part, as follows:
"Plaintiff contends that it furnished an air conditioning system for the defendant, Tuskegee Institute, said air conditioning system having been contracted for in writing by and between plaintiff and defendant, William B. Shell, an employee of Tuskegee Institute; that the defendant, Tuskegee Institute, ratified the action of the defendant, William B. Shell, in various oral conversations between representatives of the plaintiff and representatives of the defendant, Tuskegee Institute, including but not limited to, the defendants, William B. Shell and T. J. Pinnock. Plaintiff further contends that all work, labor and materials agreed to be furnished or performed by the plaintiff have been furnished or performed in full. Plaintiff contends that the defendants, William B. Shell, T. J. Pinnock and Tuskegee Institute, have conspired to defraud the plaintiff; and in fact the defendants, Shell, Pinnock and Tuskegee Institute, never intended to pay the plaintiff for the air conditioning system provided by it." (Emphasis added).
We also find that the trial court charged the jury on the issue of ratification. Consequently, Tuskegee had the burden on appeal of showing show the jury verdict was prejudicial to it.
In view of the finding of fact by the Court of Civil Appeals that the evidence was insufficient to show that persons purported to act for Tuskegee had actual or apparent authority we think Tuskegee did show prejudice and we affirm the judgment of that court insofar as it reverses the jury award of $3,500 as punitive damages. However, Tuskegee has failed to show that the jury award of compensatory damages in the amount of $2,975, plus interest, is prejudicial; therefore, we reinstate the judgment *158 of the trial court insofar as that portion of the judgment is concerned.
The Court of Civil Appeals cites City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45 (1971), as follows:
"Under either theory, recovery under Count IV requires plaintiff to establish by the evidence that Shell, Pinnock, Haynes or other unnamed agents of Tuskegee were acting within the line and scope of their authority, either actual or apparent, at the time material false representations were made to plaintiff. City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45. The question of agency is for the jury if there is sufficient evidence. Treadwell Ford, Inc. v. Wallace, 49 Ala. App. 308, 271 So.2d 505."
In City Stores, the question was whether City Stores was doing business in Pike County. This Court said:
"An agent employed for a specific purpose is a special agent and the fiduciary relationship of principal and agent applies only to the acts within the agreement. Caldwell v. Caffey, 269 Ala. 543, 114 So.2d 560.
"Mulvaney's trip to Pike County was not authorized by Loveman's. Since Loveman's apparently was not informed of Mulvaney's trip, there can be no question of ratification. To hold that under the facts as shown even by Mulvaney's testimony that he acted as agent for Loveman's in Pike County would be pressing beyond permissible limits any application of the doctrine of general agency." (Emphasis added).
It is apparent that this Court, in City Stores, recognized that if a principal has knowledge of acts performed on its behalf, even though unauthorized, then the principal can ratify those acts.
The Court of Civil appeals has failed to apply the principle of ratification to Count IV of the complaint.
As is set out in 3 Am.Jur.2d, Agency, § 175, pp. 560, 561:
"It is an established principle of the law of agency that where a person acts for another who accepts or retains the benefits or proceeds of his efforts with knowledge of the material facts surrounding the transaction, such other must be deemed to have ratified the methods employed, as he may not, even though innocent, receive or retain the benefits of, and at the same time disclaim responsibility for, the measures by which they were acquired. This general principle applies, for example, to an unauthorized contract effected, an unauthorized sale or lease of property made, or an unauthorized loan procured on behalf of the principal or purported principal. If the agent procures a contract by fraudulent or corrupt practices, although the principal has not been privy in any way to such conduct of his agent, yet by claiming the benefit of the contract, he must take it tainted as it may be with such practices." (Emphasis added).
The Court of Civil appeals held:
"Subsequent to the meeting in which it was determined to pay Haynes 75% of the contract price, a letter was sent by Colonel Burton, an employee of Tuskegee, to J. A. Fernandes, purchasing agent for Tuskegee, informing him of the results of the meeting. After stating the amount agreed to be paid to Haynes, the letter stated that it was agreed that alternatives would be pursued to complete the unfinished 25% of the contract pertaining to the heating and air conditioning portion of the contract. On the date of the letter, the work of plaintiff Mays had been competed. The unit had been delivered and installed. The unfinished portion of the contract of Haynes was the connection of the unit to the power source. This work was not the responsibility of plaintiff Mays. Mays' work had been completed at the time Haynes was paid 75% of the contract price."
Our review of the evidence to better understand these findings in the opinion of the Court of Civil Appeals convinces us that different inferences can be drawn from the evidence regarding the 75-25% of the contract price. The jury could well have determined *159 that the 25% Was retained by Tuskegee to cover the air conditioning and heating portion of the contract.
Hence, we think the Court of Civil Appeals failed to accord to the jury verdict the usual presumption of correctness.
Our judgment of reversal is based on this reasoning. Even if the evidence was insufficient to show that Pinnock and Shell had actual or apparent authority to bind Tuskegee, as the Court of Civil Appeals found, Tuskegee nevertheless could ratify their acts.
It is the law that one may ratify the acts of another not done in the name of the former. Eagle Motor Lines v. Hood, 256 Ala. 395, 55 So.2d 126 (1951); See also 3 Am.Jur.2d, Agency, § 171, p. 555.
The judgment of the Court of Civil Appeals which reverses the judgment of the circuit court awarding compensatory damages of $2,975, with interest, is itself reversed; otherwise, the judgment of the Court of Civil Appeals is affirmed.
May's motion to suspend the rules to permit it to argue the ratification issue is unnecessary and is denied; Tuskegee's motion to strike May's appendix and briefs is denied.
REVERSED, IN PART; AFFIRMED, IN PART, AND REMANDED.
HEFLIN, C.J., and FAULKNER, JONES, SHORES and BEATTY, JJ., concur.
BLOODWORTH, ALMON and EMBRY, JJ., dissent.
BLOODWORTH, Justice (dissenting).
I respectfully dissent. I cannot agree with the majority opinion authored by Mr. Justice Maddox. It reverses the Court of Civil Appeals on "the question of ratification," holding that Tuskegee "could ratify" Pinnock's and Shell's acts even though the evidence was "insufficient to show" that they had "actual or apparent authority to bind Tuskegee."
The Court of Civil Appeals speaking through Presiding Judge Wright held that testimony (relating to ratification) was not relevant "to the question of fraudulent misrepresentation of Tuskegee or to the alleged conspiracy of Tuskegee." I think the Court of Civil Appeals was correct.
Plaintiff below (petitioner May here) sued defendant below (respondent Tuskegee here) on four countsthree common counts and a count based on a conspiracy to defraud. The jury returned a verdict for petitioner solely on Count IVconspiracy assessing $2,975 (compensatory damages) and $3,400 (punitive damages).
The Court of Civil Appeals' opinion discloses:
"The essence of Count IV is that Tuskegee, acting through authorized agents Shell, Pinnock or Haynes or other unnamed agents, wilfully or recklessly without knowledge misrepresented to plaintiff that if he sold to Tuskegee a heating and cooling unit for a specific sum, that Tuskegee would pay for it. In the alternative, Count IV alleges that acting in concert with its agents Tuskegee conspired to obtain from plaintiff a heating and cooling unit with the intent not to pay for it." [Emphasis ours.]
So, plaintiff charged Tuskegee did the misrepresentation through its agents or conspired with its agents to obtain the unit with intent not to pay for it.
The Court of Civil Appeals then held:
"Under either theory, recovery under Count IV requires plaintiff to establish by the evidence that Shell, Pinnock, Haynes or other unnamed agents of Tuskegee were acting within the line and scope of their authority, either actual or apparent, at the time material false representations were made to plaintiff. City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45. The question of agency is for the jury if there is sufficient evidence. Treadwell Ford, Inc. v. Wallace, 49 Ala. App. 308, 271 So.2d 505."
* * * * * *
"It is therefore our opinion that there was no evidence that Shell, Pinnock or any other employee of Tuskegee, acting *160 with actual or apparent authority from Tuskegee, made false representations to plaintiff with intent to defraud.
"It is further our opinion that the evidence discloses no employee other than Shell and/or Pinnock made any representation to plaintiff which caused it to deliver and install the heating and cooling unit on the premises. Therefore, even if the evidence was sufficient for the jury to find that Shell and/or Pinnock were acting within their authority as agents of Tuskegee in their dealing with plaintiff, the judgment against Tuskegee alone could not stand.
"When liability of a principal is vicarious and sought to be established through the tortious act of its agents, joined in the suit as defendants, a judgment against the principal alone is inconsistent and cannot stand. Title 7, Sec. 176(4); Aggregate Limestone Co. v. Robinson, 276 Ala. 338, 161 So.2d 820."
The Court of Civil Appeals clearly points out that testimony as to ratification "may have been relevant to the common counts, but we see no relevance to Count IV upon which the verdict was returned."
I agree. The principle of ratification may have been an issue under the common counts but clearly did not become an issue under the fraud or conspiracy count. The very nature of the charge in the latter count belies "ratification." It expressly charges a willful misrepresentation by Tuskegee acting through its agents, etc., or a conspiracy between Tuskegee and its agents. How can the corporation ratify that? Either the corporation did misrepresent or conspire or it did not.
If petitioner May had wished he might have cross-appealed as to the jury's verdict on the common counts. Not having done so, and "ratification" being properly an issue only as to these counts, how can he be heard to complain now?
This Court ought to quash the writ as improvidently granted or, as I suggest, affirm the Court of Civil Appeals' decision.
ALMON and EMBRY, JJ., concur.
NOTES
[1] The Court of Civil Appeals erred in stating the amount of compensatory damages as $2,925.