Miltope Corporation seeks a writ of mandamus ordering the Honorable William R. Gordon, Circuit Judge of the Fifteenth Judicial Circuit, Montgomery County, to withdraw his order denying Miltope's motion for change of venue and to enter an order transferring this suit to the Circuit Court of Pike County. Miltope is a foreign corporation qualified to do business in the State of Alabama. It asserts that it was not doing business in Montgomery County at the time suit was filed.
 The Alabama Constitution of 1901, art. XII, § 232, provides in pertinent part:
 "No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state."
 This section has been held to be mandatory and restrictive, not permissive; that is, a qualified foreign corporation may be sued only where it is doing business at the time suit is filed. May v. Strickland, 235 Ala. 482, 180 So. 93 (1938); Ex parte Reliance Ins. Co., 484 So.2d 414 (Ala. 1986). See, also, Ala. Code 1975, § 6-3-7: "A foreign corporation may be sued in any county in which it does business by agent. . . ."
Miltope is a Delaware corporation. It owns and operates a plant at Troy, Pike County, Alabama. The exhibits attached to the petition are scanty, but the complaint shows that International Electronics, Inc., with a principal place of business in Montgomery County, sued Miltope over a dispute arising out of Miltope's agreement to manufacture and sell to International 500 "energy management units called 'CYCLER 200.'" The complaint includes five counts: 1) breach of contract "to properly manufacture the product in a good and workmanlike manner and in a timely fashion"; 2) breach of implied warranty "that the product would be of good and merchantable quality and would be suitable for *Page 273 
its intended use"; 3) misrepresentation "that a prototype had been built and that defendant was ready to begin production," and that "the product was being produced and was in a shape to be shortly ready for delivery"; 4) other misrepresentations regarding Miltope's production and expenses; and 5) misrepresentation as to the quality of the goods to be produced.
 The complaint itself does not indicate where the negotiations took place, where the contract was signed, where the goods were to be delivered, or where the alleged misrepresentations were made. The complaint alleges that a Miltope employee, Hubert Mink, made the alleged misrepresentations. International filed an amended complaint adding Mink as a defendant, reciting that he is a "citizen of Montgomery County." Miltope's motion for change of venue was supported by the bare statements that it did not do business in Montgomery County at the time the suit was filed and that it was in fact served at its plant in Pike County. The motion is supported by the affidavit of the director of operations of the Troy plant, also making the bare statement that Miltope did not do business in Montgomery County at the time suit was filed or at any time pertinent to this action.
 The foregoing is all that appears from the petition and its exhibits. International has filed a motion to supplement the record with two affidavits, alleging the following:
 "1. The Circuit Court of Montgomery County postponed oral arguments on the motion to change venue in order to permit the parties to submit evidence.
 "2. Prior to the time that evidence was submitted, the Circuit Court ruled in the case.
 "3. The ruling of the Circuit Court of Montgomery County was correct, and the evidence submitted in opposition to the Petition for a Writ of Mandamus demonstrates the correctness of the Circuit Court's ruling.
 "4. Petitioner also has submitted additional evidence in support of its petition for a Writ of Mandamus.
 "5. Plaintiff-respondent submits the affidavits attached hereto as Exhibits 'A' and 'B.' "
 Miltope responds with a motion to strike the affidavits, citing cases regarding the rule that only matters included in the trial court record will be considered on appeal. A petition for mandamus, however, does not include the entire record of the trial court proceedings, but only so much thereof as the petitioner chooses to attach as exhibits. See Rule 21(a), A.R.App.P. True, the respondent has the opportunity to supplement the "record" by attaching exhibits of its own, and these should ordinarily include only matters submitted to the trial court.
 From the allegations of the motion to supplement, however, it appears that the trial court ruled in International's favor before the time set for hearing on the motion for change of venue, and before International submitted its evidence in opposition, thus obviating the necessity for International to submit any such evidence. Although these allegations are not sworn to, International's attorney signed the motion to supplement, and Miltope has not contradicted the allegations. Cf. Rule 11, A.R.Civ.P. Therefore, we shall consider the affidavits to the extent that they do not contradict matters actually submitted to the trial court.
The first affidavit reads:
 "My name is Jack Wood and I am over the age of twenty-one years. In early 1985, Mr. Frederick (Bucky) Berrey spoke to me about a product concept he had for his company, International Electronics, Inc. At that time, Hubert Mink, who was the highest ranked employee at Miltope Corporation, had told me that Miltope was looking to expand its customer base. I told Mr. Mink about the product International Electronics, Inc., wanted to market, and he asked me to set up a meeting for him with Mr. Berrey. I arranged the meeting, and it was held in Montgomery County, Alabama.
 "Mr. Mink, Mr. Berrey, and I first met at a local lounge, and then went to the offices of International Electronics, Inc., *Page 274 
in Montgomery. At the time of the meeting in Montgomery, Mr. Mink made several representations about what Miltope Corporation could do for International Electronics, Inc. It was very clear from the conversation, and also from my earlier communications with Mr. Mink, that Mr. Mink was acting on behalf of Miltope Corporation, and that Miltope Corporation was soliciting the business of International Electronics, Inc."
The second affidavit reads:
 "My name is Frederick Berrey, and I am over the age of twenty-one years. At the times complained of in the complaint, I was the president of the plaintiff, International Electronics, Inc.
 "In March of 1985, defendant Hubert Mink, who was the plant manager of the Miltope Corporation in Troy, Alabama, and who was the highest ranking employee of Miltope who resided on a permanent basis in Alabama, came to Montgomery County to solicit business of International Electronics, Inc., on behalf of Miltope Corporation.
 "While in Montgomery, defendants represented that Miltope would and could Manufacture a product of International Electronics, Inc., in a good and workmanlike fashion and at a stated cost for the entire unit. . . . [D]efendants made other representations while Mr. Mink was physically present in Montgomery County.
 "Based on the representations made by defendants in Montgomery County, International Electronics, Inc., entered a contract with Miltope, and relied in other ways as set forth in the complaint.
 "As I understand it, the basis of venue in Montgomery County, Alabama, is that Miltope physically did business by agent in Montgomery County at the time of the matters alleged in the complaint. Based on the foregoing, I can affirm that Miltope did do business in Montgomery County, Alabama, at the relevant time.
 "Although Miltope now takes the position that Mink was acting only for himself, Mink told me that he was acting on behalf of Miltope, and was seeking to expand Miltope's customer base. Because Mink was the highest ranking employee of Miltope living in Alabama, I certainly had no reason to believe the contrary."
 These facts, or such of them as would be admissible, are consistent with the matters included as exhibits to the petition. It is incumbent upon Miltope to demonstrate that venue is improper in Montgomery and that the respondent trial judge erred in denying the motion for change of venue. Ex parte Reliance Ins. Co., 484 So.2d 414 (Ala. 1986); Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala. 1982).
 It appears from International's affidavits, and it may be inferred from its complaint, that Mink, acting within his authority as an employee of Miltope, met in Montgomery County with the president of International to negotiate sales of Miltope's products to International; that the parties entered into a contract; that Mink misrepresented Miltope's capabilities; and that Miltope breached the contract. Clearly Miltope was doing business in Montgomery with International. If the circumstances were otherwise — for example, if the specifications were worked out in Pike County, the contract was executed there, and delivery was to take place there — then it was Miltope's burden to show this in order to demonstrate that venue was improper in Montgomery County.
 In a number of recent cases, this Court has rejected claims that a foreign corporation was not doing business in the forum county. A good summation appears in Ex parte Peabody Galion Co., 497 So.2d 1126, 1129 (Ala. 1986):
 "In a recent decision, this Court reaffirmed the definition of a foreign corporation's 'doing business' as 'a corporation's performance of "some of the business functions for which it was created." ' Ex parte Reliance Insurance Co., 484 So.2d at 417, quoting Ex parte Jim Skinner Ford, Inc., 435 So.2d 1235, 1237 (Ala. 1983). See, generally, Ex parte Snoddy, 487 So.2d 860 (Ala. 1986).
 "As early as 1899, in determining whether a corporation's activities *Page 275 
amounted to 'doing business,' this Court found that the sale of the corporation's products was as much an 'exercise of . . . corporate functions' as was the manufacture of the products. The Court went on to say that '[t]he disposition of products is ordinarily a function necessary to the continued operations of a manufacturing corporation.' International Cotton Seed Oil Co. v. Wheelock, 124 Ala. 367, 27 So. 517
(1899). This holding was reaffirmed in 1982 in Ex parte Harrington Manufacturing Co., 414 So.2d 74
(Ala. 1982)."
 See, also, Ex parte McGugin, 423 So.2d 1367 (Ala. 1982); and cf. Ex parte Morrison Assurance Co., 437 So.2d 519 (Ala. 1983), and City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45 (1971).
WRIT DENIED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.