236 So.2d 349

**PROGRESSIVE FINANCE COMPANY,**
a Corporation,

v.

**Billy Lee MILNER.**

**6 Div. 44.**

Court of Civil Appeals of Alabama.

June 3, 1970.

R. V. Wooldridge, James W. Strudwick, Tuscaloosa, for appellee.

Turner & Turner, Tuscaloosa, Hutson & Elrod and Bryan McAfee, Decatur, for appellant.

THAGARD, Presiding Judge.

The appellee, Billy Lee Milner, purchased a 1959 Pontiac automobile from Couch Motor Company on January 5, 1966, and executed a conditional sales contract whereby title to said automobile was retained by said Couch Motor Company until the entire time price was paid in full. On that same date Couch Motor Company sold, assigned and transferred all of its right, title and interest in and to said contract and said automobile to the appellant, Progressive Finance Company, Inc.

There was no verbal evidence presented in this case which showed whether or not plaintiff-appellee made a down payment, but the bill of sale showed a down payment of $50.00.

The appellee's first payment which was due on February 15, 1966, was made in two installments; $28.00 on February 18, 1966, and $30.00 on February 25, 1966. No other monthly installments were paid on this contract and on March 28, 1966, the appellee's automobile was damaged by fire. The appellee had the automobile towed in and reported the fire damage to the appellant.

The insurance adjuster had obtained written authorization from the appellee to move the automobile to Horton's Garage for inspection and repairs. After Joe Mott's Garage made an estimate of the cost of repairs, it was instructed by the appellant to pick up the automobile from Horton's Garage and repair it. Joe Mott's Garage picked up the automobile on April 7, 1966, and took it in for repairs.

On April 15, 1966, the appellee filed this action in the Circuit Court of Tuscaloosa County, Alabama, claiming damages in the amount of $5,000.00 in each of two counts; Count One for the conversion of the 1959 Pontiac automobile, and Count Two for the wrongful taking of said automobile by the appellant. The appellant filed a demurrer to the complaint which was overruled by the trial court. The appellant then entered a plea in short by consent the general issue and also filed a written plea of setoff claiming $812.00 over and against the appellee, being the balance due on the conditional sales contract for the purchase of the automobile.

In January 1969, this cause was tried before a jury and the trial court refused to give the general affirmative charge requested by the appellant. On January 15, 1969, the jury returned a verdict in favor of the appellee in the amount of $5,000.00. On February 13, 1969, the appellant filed a motion for new trial which was overruled, and thus this appeal.

Appellant's appeal in this case is based upon two basic assignments of error: (1) The refusal of the trial judge to give the affirmative charge with hypothesis requested in writing by the defendant-appellant; and (2) Excessiveness of the jury's verdict.

The conditional sales agreement which was entered into by the seller, Couch Motors, and the purchaser, Billy L. Milner, the plaintiff-appellee, and which was assigned to the defendant-appellant, reads in pertinent part as follows:

"Purchaser at his own expense shall maintain car in good repair, but *seller, if it so elects,* to protect its interest in said car *may cause said car to be repaired* and purchaser agrees to pay seller the cost thereof on such terms as seller may elect." (Emphasis ours)

Therefore, by the terms of the conditional sales agreement, the defendant-appellant finance company had the paramount right to elect to have repairs made with no restriction as to who should make the repairs.

While there is some testimony for the plaintiff-appellee that the defendant's employee, Mr. R. V. Rominger, stated to the insurance adjuster that Progressive Finance Company was going to sell the automobile for salvage, the undisputed testimony by the garage owner, Joe Mott, was as follows:

"Q Let me ask you this. Did your place make an estimate of the repairs on that car?

"A Yes, sir, we did.

"Q Now, Mr. Mott, I'll show you Defendant's Exhibit 2 and ask you to identify that?

"A That's right.

"Q Is that your estimate?

"A Yes, sir, that is our estimate.

"Q Your estimate of repairs on that car?

"A Yes, sir.

"Q And what is the amount of that estimate?

"A Two twenty-three, eighty-seven.

"Q And I'll ask you that if after that estimate was made you were instructed to pick the car up?

"A That true.

"Q You were instructed to pick it up and repair it?

"A. Yes, sir."

■ Since the automobile was taken to Joe Mott for repair as authorized by the terms of the conditional sales agreement and was not sold for salvage, there was no trespass or conversion. It is our view that if the automobile had been sold for salvage, there would have been trespass and conversion. Therefore, we hold that the trial court erred in refusing to give the affirmative charge requested by the defendant-appellant.

We now turn to the appellant's assignments of error alleging that the jury's verdict was excessive. Although we are of the opinion that the trial court is to be reversed for refusing to give the affirmative charge, we think it would be beneficial to the trial court and the parties involved in this litigation to discuss the matter of the jury's verdict which, it is clear to this court, was excessive.

The court in Ramos v. Fell, 272 Ala. 53, 58, 128 So.2d 481, 484, set out the necessary elements to justify the award of punitive damages in a trespass action as follows:

"It is only where the trespass is attended by rudeness, wantonness, recklessness or an insulting manner or is accompanied by circumstances of fraud and malice, oppression, aggravation or gross negligence that a jury is warranted. in assessing punitive damages in an action of trespass. (Citations omitted.)"

■ The rule as to punitive damages seems to be the same in trover as in trespass. Roan v. McCaleb, 264 Ala. 31, 84 So. 2d 358. Appellee evidently relies upon this testimony of appellee, taken from the transcript, in support of that part of the verdict that constituted punitive damages:

"Q And what, if anything, did you do when you found out that your car had been moved to Joe Mott's?

"A Well, I went and asked them where it was at and they said it was at Joe Mott's.

"Q Who was this you were talking to?

"A Mr. Heysel.

"Q Is that the gentleman seated right over there?

"A Yes, sir.

"Q And what, if anything, or what explanation, if any, did he give you for removing your car to Joe Mott's Garage?

"A Well, sir, he said, 'It's my car and I'll do what I want to with it'.

"Q Was anything said by you at that time as to whether or not you wanted your car repaired at Horton's?

"A Well, no, sir, I—he just flew up with that so I just turned around and walked out."

The foregoing quote from the transcript is the only evidence offered by the plaintiff that the defendant was "rude" or "insulting" toward the defendant, and there is no evidence of fraud, malice, oppression, aggravation, wantonness or gross negligence on the part of appellant. If the quoted language of the appellant can be considered "rude" or "insulting", the use of the same occurred after the alleged trespass or conversion, and the cases hold that the trespass (or trover, as the case may be) must be "attended" by rudeness or an insulting manner. From a careful reading of the entire transcript we draw the inference that the plaintiff-appellee had harassed

defendant-appellant considerably about the check for the proceeds of the insurance, and that the alleged intemperate language of the appellant was the result of that harassment. However that may be, we are clear to the conclusion that appellant's alleged intemperate language was not so aggravated as to justify punitive damages of about $4,950.00. Too, we call attention to the fact that there was no evidence that appellee demanded the return of the car or that appellant refused to return the car upon demand.

 The testimony of the appellee was that his automobile was worth $700.00 prior to the damage caused by the fire and that it was worth $50.00 afterwards. The appellee had paid only $50.00 down, $58.00 for February's installment, and $8.12 for an extension of the March installment, a total of $116.12. He also had 6 weeks' use of the automobile. On the other hand, the appellant had over $500.00 invested by financing appellee's purchase. Therefore, when the appellant allegedly converted or wrongfully took said automobile the value of the same was only $50.00. The measure of compensatory damages in conversion is the value at the time of conversion, with interest. Smith & Sons v. Howell, 21 Ala.App. 549, 110 So. 57. Since the acts complained of were not accompanied by rudeness, wantonness, recklessness or in an insulting manner, nor were accompanied by circumstances of fraud or malice, oppression, aggravation or gross negligence the jury was not warranted in assessing punitive damages.

Since we are reversing because of the failure of the court to give the general affirmative charge and have called attention to the excessiveness of the verdict, we do not think it necessary to discuss the other assignments of error.

For the error indicated, the judgment of the Circuit Court is reversed and the cause is remanded.

Reversed and remanded.