271 So.2d 505

**TREADWELL FORD, INC.**

v.

**Gerald L. WALLACE.**

Civ. 2.

Court of Civil Appeals of Alabama.

Jan. 3, 1973.

Vincent F. Kilborn, Mobile, for appellant.

Matranga, Hess & Sullivan and Roderick P. Stout, Mobile, for appellee.

BRADLEY, Judge.

This is an appeal from a judgment of the Circuit Court of Mobile County rendered in favor of appellee, Dr. Gerald Wallace, for the conversion of his 1961 MGA automobile by appellant, Treadwell Ford, Inc.

The proceedings were commenced on September 1, 1967 when appellee filed a complaint against appellant for breach of an agreement to repair his car. There were several amendments to the complaint which included adding a count for negligence. Then on June 4, 1970 appellee amended his complaint again. This amended complaint contained two counts. The first count went out on demurrer and the second count stayed in the complaint. This count two sounded in trover for the conversion of one MGA automobile, and alleged that the conversion occurred on September 7, 1966. The appellee also asked for punitive damages. In answer appellant pled the general issue.

Trial was commenced on count two of the complaint. Sometime during the trial the complaint was amended by adding count three which was identical to count two except for the allegation of the time of conversion. Count three alleged that the conversion of appellee's automobile occurred on " . . . to wit November 15, 1966 . . . ." Before submission of the case to the jury the appellant requested the general affirmative charges as to the case as a whole. These requested charges were refused and the case was submitted to the jury on counts two and three.

The jury returned a general verdict in favor of appellee for $2,000.00 plus costs. Thereupon appellant filed a motion for a new trial. The motion was denied. He then filed notice of appeal to this court from the judgment on the merits and the order on the motion for new trial.

The evidence and its tendencies reveal the following facts.

The appellee purchased the car in question for $750.00 and spent about $300–$500 fixing it up and estimated its value in 1966 as $1,500–$1,600.

He let a friend, Ken Wallace, no relation, borrow the car in the summer of 1966. Sometime after obtaining the car, Ken Wallace reported to appellee that vandals had broken the windshield and ripped the canvas top, and he would have it repaired.

Ken Wallace took the car to Jim's Paint and Body Shop there in Mobile for repairs. Appellee disclaimed any firsthand knowledge of the car being at Jim's.

After about three months, and without it being repaired, the car was taken to appellant by direction of Ken Wallace with the approval of appellee, on November 15, 1966.

Appellee stated that he was told that appellant was to repair the roof and windshield. Later, according to appellee, appellant entered into an agreement with him to get the car in running condition.

Appellee stated that he next saw his car at appellant's in December 1966. At this time he stated the value of the car to be about $1,500.00, and it was in drivable condition, but would not run.

He next saw his car in the summer of 1967 at White's Imports in Mobile. He stated the car would not run, had no battery and the interior was completely deteriorated. He estimated its value at that time to be about $50.00.

During the time that the car was at appellant's Ken Wallace was expected to have it repaired and appellee stated that he had not limited Ken Wallace's authority to have the repairs made. However, Ken Wallace moved to Baton Rouge, Louisiana and appellee stated he took over the task of getting the car repaired. Appellee stated that he informed appellant that the car belonged to him.

Appellee testified that he made many efforts to get his car repaired and received many promises from appellant that it would be repaired, but it was not repaired except for the windshield.

Appellee stated that he was told by appellant in the summer of 1967 that they did not know where his car was, that they must have lost it when they moved their place of business. Appellee also said that he did not know where the car was until he located it at White's Imports. He said he did not authorize Ken Wallace or anyone else to take the car to White's Imports.

Appellee testified that appellant never refused to return his car nor did he demand that the car be returned. He wanted it fixed and put in running condition.

Witnesses for appellant testified that the car was taken from Jim's to appellant's on November 15, 1966 at the direction of Ken Wallace. They stated that Ken Wallace asked them to repair the windshield and it was so repaired. Later they learned that the car belonged to the appellee. Appellee was asked to come get the car because appellant had done all it could for the car.

Later Ken Wallace, by letter, requested that appellant send the car to White's Imports for repairs. The car was taken by appellant's wrecker to White's on March 22, 1967. Ken Wallace paid appellant $46.-35 for the repair of the windshield. The testimony was that at that time the car was in the same condition as when appellant received it.

One of the witnesses for appellant said that after the windshield was repaired, he called Dr. Wallace and told him to come get his car. Dr. Wallace said he wanted his car put in running condition. He was told that appellant could do no more for the car because they were not equipped to handle foreign cars. This witness stated that he was directed by appellee to get in touch with Ken Wallace, who was finally located in Baton Rouge, Louisiana. Upon being told that the car would not run and the doctor wanted it fixed, it was agreed between Ken and appellant that the car would be taken to White's Imports for repairs. Ken Wallace sent a check for $25.-00 to have the car repaired. The car was taken to White's by appellant's wrecker.

In his letter to appellant directing the disposition of the car, Ken Wallace asked that Dr. Wallace be informed that his car was at White's. The witness for appellant stated that he called Dr. Wallace and told him where his car was located. Dr. Wallace disclaims any knowledge of such a call.

White's Imports repaired the car and awaited instructions from Ken Wallace. The bookkeeper for White's Imports stated that White's did not know who the car belonged to and that White's dealt only with Ken Wallace. The bookkeeper stated that the car was in pretty bad shape when it was received at White's and is still in bad shape and will not run.

Appellant's sixty-five assignments of error were argued under three main headings:

1. The general affirmative charge as requested by appellant should have been given to the jury because:

a. the evidence failed to show facts constituting a conversion;

b. there was no evidence establishing termination of an agency relationship between appellee and Ken Wallace; and

c. there was a fatal variance between pleading and proof of the date of the alleged conversion.

2. Damages were not sufficiently proved or were excessive.

3. There was no evidence establishing a right to punitive damages for the appellee.

In arguing that it was due the general affirmative charges for the reason there was no evidence of a conversion, appellant says first that the appellee, in order to prove a conversion, should have proved that by some tortious act appellant deprived appellee of the possession of his car. Appellant contends that there is no evidence of a deprivation of possession and that at most the evidence shows there was a breach of the agreement to repair or negligent repair of the car. Here appellant relies on the case of Cotton v. Harris Transfer and Warehouse Co., 21 Ala.App. 136, 106 So. 220.

Secondly, appellant argues that where possession was obtained lawfully and dominion thereover has not been exercised inconsistently with the possessory rights of appellee, a demand and refusal is necessary in order to establish a conversion, and cites us to Pollard v. Pollard, 207 Ala. 270, 92 So. 488; and Cotton v. Harris Transfer and Warehouse Co., *supra*.

■ Although the cited cases correctly state a part of the law of trover, the facts in those cases are distinguishable from those in the instant case. In the *Pollard* case there was no destruction of the property, only a delay in its return. And, in the *Cotton* case the court said that "mere failure to perform an act obligatory by contract, or by which property is lost to the owner" will not support an action for conversion, but a question is presented for jury resolution where a gratuitous bailee delivers the property of plaintiff to one who he thinks has the authority to receive it and by such act the property is lost to the true owner.

■ Omitting the question of agency for the time being, and construing the facts in the present case most favorably for appellee, against whom the general charge was requested in the trial court, the car in question was delivered to appellant by the agent of appellee for repair of the windshield. Appellee took over from the agent, Ken Wallace, the negotiations with appellant for the repair of the car. Then, after retaining possession of the car for several months, appellant, acting under instructions from Ken Wallace, delivered the car to White's Imports, a third person, without notice to appellee, thereby causing the loss of the car to appellee and its complete destruction.

In keeping with the rule of the *Cotton* case, the most that can be said for appellant is that the question of conversion vel non in the deliverance of the car to White's and its destruction was for the jury's determination.

■ We would also point out that we consider appellant's argument on this point without sound basis for its failure to con-

sider that a conversion can be accomplished where there is a wrongful delivery of personal property by a bailee resulting in its loss to the true owner.

In Doyle v. Peerless Motor Car Co. of New England, 226 Mass. 561, 116 N.E. 257, the Supreme Judicial Court of Massachusetts stated:

> "A delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use. In such cases, neither a sincere and apparently well founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defense even to a gratuitous bailee."

This appears to be the second principle relied on in *Pollard* for the submission of that case to the jury, and the principle is followed in other Alabama cases. In Alabama and Tennessee Rivers R. R. Co. v. Kidd, 35 Ala. 209, where a warehouseman or bailee delivered cotton of the plaintiff to a third party by mistake whereby the cotton was lost to the owner, the Supreme Court stated:

> "Trover will not lie for a bare nondelivery of goods by a warehouseman, unless they are in his possession, and he refuses to deliver them on demand. In like manner, trover will not lie for goods lost or stolen by the negligence of a warehouseman. *But, where he is an actor, and delivers them to a third person, though by mistake, the action lies.*" (Emphasis added.)

Hence we conclude that there is evidence in the case at bar showing more than mere negligence or nonfeasance. The jury could reasonably conclude from the evidence that appellant was the actor by whose tortious act of wrongful delivery and by whose statements that the whereabouts of appellee's car was unknown, the car was in fact lost to appellee.

There being evidence of a conversion before the jury, the trial court did not err in refusing to give appellant's requested general affirmative charge on this basis.

■ Appellee had argued that appellant's negligence in properly caring for the car and permitting it to be destroyed by the weather constituted a conversion. But such argument is specifically refuted in Howell v. Dodd, 229 Ala. 393, 157 So. 211, wherein the Supreme Court stated:

> ". . . [I]f there was loss to the machine by negligence in allowing it to be placed and remain in the open without protection from the weather, such loss was an item of damage due to be allowed defendant upon proper plea and proof. But it was not, as defendant contends, such a conversion as to allow defendant its full value, in the absence of proof that it was thereby rendered worthless, and then only when plaintiff was due to protect it in the use of ordinary care . . . ."

There is no evidence in the case at bar that appellant permitted appellee's car to become worthless by being exposed to the weather while sitting on its lot. The only evidence of the value of the car while it was at appellant's is appellee's statement that its value in December 1966 while on appellant's lot was $1,500—$1,600 and testimony for appellant that when the car was taken to White's Imports on March 22, 1967 it was in about the same condition as when it came to appellant's. This being the factual situation, appellee's argument must fail for there is no evidence of a conversion prior to March 22, 1967.

In support of its second argument that the trial court erred in refusing to give the general affirmative charges in its favor, appellant contends that there is no evidence of a termination of the agency relationship between Ken Wallace and appellee, hence, as a third party dealing with appellee through his agent, appellant was justified in delivering the car to White's pursuant to Ken Wallace's instructions.

In support of this argument, appellant cites us to the case of Herndon v. Stanton, 221 Ala. 427, 129 So. 18, in which the Supreme Court of Alabama found that there was no termination of an agency relationship.

There are two relevant principles to be gleaned from *Herndon*. These are (1) agency by estoppel and (2) failure of principal to give adequate notice of termination of the agency.

■ As used in *Herndon*, agency by estoppel occurs when instructions terminating the agency have been communicated to the agent but not to the third party dealing with such agent.

■ The second principle enunciated in *Herndon* is that failure to give adequate notice of the agency termination to the third party prevents the dissolution of the relationship.

Appellant contends that the factual situation in *Herndon* is closely analogous to that in the present case. We cannot agree.

■ The facts in *Herndon* show that the principal in no way indicated to the third parties that the agency relationship was terminated. Whereas, in the instant case, the evidence showed by testimony supportive of appellant's case that appellant had not agreed with Ken Wallace prior to Ken's phone call and letter in March 1967 to get the car running, while appellee was under the impression that appellant was to get the car running. Appellant also produced testimony that appellee told it to contact Ken Wallace about .repairs, whereas appellee testified that he personally took over negotiations with appellant from Ken Wallace while the car was at appellant's. The letter from Ken Wallace and the circumstances surrounding it would indicate that neither Ken nor appellant believed that Ken had the authority to have the car moved to White's without appellant notifying appellee of the move. Although appellee stated that he did not

limit Ken Wallace's authority to have the car repaired, there is sufficient evidence, albeit conflicting, to support a conclusion that Ken's agency was limited or terminated prior to the March phone call and subsequent letter.

■ The rule generally prevails in this state that where evidence is in conflict, the existence and scope of an agency relationship is one for the jury to determine. Gibson v. Snow Hardware Co., 94 Ala. 346, 10 So. 304; Automotive Acceptance Corp. v. Powell, 45 Ala.App. 596, 234 So.2d 593.

In the instant case the question of agency was properly presented to the jury and the trial court did not err in denying the requested general affirmative charge on this ground.

In its third contention that the general affirmative charges were improperly denied, appellant says there was a fatal variance between the allegations as to the time of the conversion and the proof of the conversion.

Count three alleged the time of conversion as "to wit, November 15, 1966." Count two laid the time of the conversion as "on the 7th day of September 1966." The evidence shows that appellant came into possession on November 15, 1966 and gave up possession on March 22, 1967. We have concluded that a conversion could not have occurred until March 22, 1967, the day appellant sent the car to White's Imports.

■ Time is not of the essence in a trover action, hence it is only necessary to allege it as nearly as practicable. Abercrombie v. Pell, 235 Ala. 396, 179 So. 371. And when time is alleged under a videlicet in an action for conversion, the proof of the exact date does not have to coincide with the allegation. Atchley v. Wood, 255 Ala. 227, 51 So.2d 705. In fact a disparity between the allegata and probata of the dates of when an act occurred of up to five years has been held not to constitute

a variance where laid under a videlicet. Nelson v. Cutter Boat and Motor Co., 260 Ala. 648, 72 So.2d 86. Consequently there was no variance between the proof of the date of conversion and the date alleged in count three.

The date of conversion as alleged in count two is September 7, 1966. This date is not laid under a videlicet. And it has been decided that the failure of the proof to coincide with an allegation of the date of the conversion absent a videlicet constitutes a fatal variance. Mobile J. & K. C. R. R. Co. v. Bay Shore Lumber Co., 158 Ala. 622, 48 So. 377.

Therefore, if requested, the general affimative charges were due to be given as to count two but not as to count three. However, the request for the general affirmative charges was not directed to any particular count but to the complaint as a whole.

The Supreme Court has said that if the general affirmative charge is requested as to the case as a whole, the refusal to give it is not error if there is one good count in the complaint. Sovereign Camp, W. O. W. v. Barton, 237 Ala. 120, 186 So. 126; Starr Jobbing House, et al. v. May Hosiery Mills, 207 Ala. 620, 93 So. 572.

There being no variance as to count three and there being no request for the general affirmative charges as to count two, the trial court properly denied the appellant's requested charges.

Although appellant failed to request an affirmative charge directed to either count two or count three, it says in its motion for new trial that there was a fatal variance between the proof and the allegation of when the conversion occurred. The question raised by this ground of the new trial motion is whether appellant waived this contention as a ground when it failed to direct its request for the general affirmative charge to count two of the complaint. We conclude that it did.

We deem it the better procedure for a defendant to point out a variance to the trial court by way of the requested charge. By so doing the trial court is given an opportunity to eliminate from the consideration of the jury those counts that constitute a variance.

By failing to bring a variance to the attention of the trial court, the court has no choice other than to let the whole complaint go to the jury, as was done in the instant case, and when a general verdict is returned that can be referred to a good count, the trial court cannot be said to have erred. Therefore the ground in the motion for new trial based on the variance between the pleading and proof of the date of the conversion is deemed waived.

Appellant's last two arguments for reversal assert that the evidence of damages is insufficient to support the verdict and judgment and there was no evidence supportive of punitive damages.

The measure of damages in an action for conversion is the value of the property at the time of the conversion. Merritt v. Williams, 214 Ala. 427, 108 So. 257; Granade v. United States Lumber & Cotton Co., 224 Ala. 185, 139 So. 409. We have concluded that the conversion in the present case as found by the jury occurred on March 22, 1967, the day when the car was taken to White's Imports by appellant. Appellee testified that the value of the car in December 1966, while in possession of appellant was $1,500–$1,600 which was the approximate value when it was loaned to Ken Wallace. Appellant's witnesses stated that the value of the car was approximately the same the day it went to White's as the day they received it. Hence we conclude that the value of the car at the time of the conversion was $1,500–$1,600.

Appellant's argument that there was no competent evidence of value is without foundation for the appellee's testimony as to value is competent and acceptable. McElroy, Law of Evidence in Alabama, Vol. 1, Sec. 128.11, p. 325; Park-

er v. Taylor, 220 Ala. 68, 124 So. 199; and Whitehead v. State, 16 Ala.App. 427, 78 So. 467.

Appellant's last argument for reversal is that the $2,000.00 verdict is excessive because the jury allowed for punitive damages when none were proved.

Appellant cites us to the case of Ramos v. Fell, 272 Ala. 53, 128 So.2d 481 for the following rule regarding punitive damages:

> "It is only where the trespass is attended by rudeness, wantonness, recklessness or an insulting manner or is accompanied by circumstances of fraud and malice, oppression, aggravation or gross negligence that a jury is warranted in assessing punitive damages in an action of trespass . . . ."

Appellant also brings to our attention the case of Progressive Finance Co. v. Milner, 45 Ala.App. 684, 236 So.2d 349, wherein this court disallowed punitive damages as an element of the award. It was asserted in that case that the facts did not exhibit "rude" or "insulting" conduct toward the defendant at the time of the alleged conversion. Hence there could be no punitive damages.

█ █ In the case at bar there is no evidence of any rude or insulting language or conduct directed toward appellee at the time of the conversion, i. e., March 22, 1967. The allegedly rude and insulting conduct relied on by appellee to support his request for punitive damages was directed toward his wife at a time other than the date of the conversion. Such alleged conduct on the part of the appellant's employee did not rise to that stature required to support an award for punitive damages. Hence we conclude that the verdict was excessive.

The Supreme Court has decided, however, that a judgment for a sum of money in excess of that authorized by the evidence can be upheld on the condition that the plaintiff remit the excess. Ferguson v. Callahan, 262 Ala. 117, 76 So.2d 856.

Consequently, this case is affirmed on the condition that within thirty days of this judgment the appellee remit $400 of the $2,000 judgment to the appellant; otherwise this case is reversed and remanded.

Affirmed conditionally.

WRIGHT, P. J., and HOLMES, J., concur.