328 So.2d 598

**TUSKEGEE INSTITUTE, a corporation**

**v.**

**MAY REFRIGERATION COMPANY, INC.,**
**a corporation, et al.**

**Civ. 553.**

Court of Civil Appeals of Alabama.

March 10, 1976.

Rehearing Denied May 5, 1976.

Maye, Melton, Kent & Gunter, Opelika, for appellee, May Refrigeration Co., Inc.

Gray, Seay & Langford, Tuskegee, for appellant.

WRIGHT, Presiding Judge.

Plaintiff recovered judgment against defendant Tuskegee Institute upon a complaint alleging a conspiracy between defendant Tuskegee, certain named defendant agents and other unnamed agents of Tuskegee to defraud plaintiff by puchasing a heating and air conditioning unit with the intent to avoid payment therefor. Judgment was for $2,925.00 plus interest and $3,500.00 punitive damages. Tuskegee appealed. We reverse.

Suit was first begun in Lee County, Alabama, against defendant William B. Shell for money due on account. Shell was a resident of Lee County. By amendment, Darryl Haynes and Tuskegee Institute were added as defendants. After various motions and discovery, Tuskegee filed cross-claims against Shell and Haynes alleging third party liability against Shell and Haynes. Plaintiff amended the complaint to add additional common counts together with Count IV, alleging that defendant Shell, and T. J. Pinnock, together with other unnamed agents and employees of Tuskegee, conspired with Tuskegee to induce plaintiff to sell and install a heating and air conditioning unit at Tuskegee with the intent to avoid payment therefor. T. J. Pinnock was subsequently added as a defendant by plaintiff.

Subsequent to a pre-trial hearing an extensive pre-trial order was entered setting forth the contentions of each party. Testimony was subsequently taken before a jury lasting several days and comprising some 800 pages of transcript. The jury returned a verdict on Count IV against Tuskegee Institute solely and in favor of Shell and Haynes on Tuskegee's cross-claim.

The issues presented by Tuskegee on appeal are primarily two. First, the evidence was insufficient to show that Tuskegee, through its duly autorized agent or agents, entered into a contract of purchase with plaintiff. Second, if duly authorized agents of Tuskegee, through fraud and misrepresentation, induced plaintiff to sell to defendant Tuskegee, and such agents are co-defendants with Tuskegee, may a judgment against Tuskegee only stand? It appears from the allegations of Count IV, the theory which plaintiff presented in the pre-trial hearing, the evidence presented and the argument of plaintiff in brief and oral argument before this court that a third issue is presented. That is, may a corporation conspire with its own agents to commit fraud?

We present as concisely as possible the tendencies of the evidence as to what occurred giving rise to this suit.

In 1972, Tuskegee Institute had a department in its program known as HRDC or Human Resources Development Center. It was determined that as a part of that department's operation there was needed a specialized facility designated as a learning center. Plans for such a learning center were drawn by Tuskegee's architectural designer with input and advice from various specialists employed in HRDC, including defendants Shell and Pinnock. Pinnock was the head of the department. Shell was employed therein.

With the completed plans and specifications bids were requested by Tuskegee for a construction contract. At the suggestion of Shell, defendant Darryl Haynes submitted a bid which was accepted and a contract was signed between Haynes and Tuskegee. The contract included the procur-

ing and installing of a cooling and heating system.

The evidence disclosed that defendant Shell had requested Haynes to enter a bid even though Haynes was at the time employed by another firm. Shell informed Haynes that he would assist him in the contract through on-site supervision. Shell procured a job superintendent for Haynes to hire and the work began. Shell stated that his superior, Pinnock, delegated to him the task of supervising the construction as it progressed. Pinnock denied that he did so and stated he was not authorized by Tuskegee to make such designation. Another employee, stated by Shell to have been present when Pinnock made such delegation, denied it occurred.

As the job progressed, Haynes and Shell discussed the heating and cooling system. At Haynes suggestion, Shell contacted one of plaintiff's officers, Larry May. May came to the Institute with brochures on equipment and met with Shell. As Shell and May were discussing the matter, Pinnock came by. Shell stated he showed the brochure to Pinnock and told him that was the unit needed but that it was going to cost some more than allowed in the contract. He said Pinnock told him in the presence of May to clear the unit with the physical plant department and the additional funds could be obtained. Pinnock denied making such statement. He said he told Shell he knew nothing about such things and to clear it with the physical plant department whose responsibility it was to approve all construction.

May subsequently delivered and installed the unit except for connecting it to the power source. Shell signed for and accepted delivery of the unit in his own name after securing approval of the unit from Haynes. This was the first time plaintiff had ever done any business with either Tuskegee Institute or with Shell or Haynes. He knew nothing of the line of authority at Tuskegee or how they did business. He made no inquiry concerning the authority of Shell or Pinnock prior to delivery.

Shortly after the unit was emplaced, Tuskegee had a meeting with Haynes. It was determined that 75% of the contract had been completed. Tuskegee paid to Haynes $7,607.25 or 75% of the contract price on March 5, 1973. Haynes, on March 6, gave a check for $7,157.25 to Shell. Shell stated he disbursed all of that sum to pay for materials and labor used on the job. Plaintiff was not paid by Shell or Haynes.

Subsequent to the meeting in which it was determined to pay Haynes 75% of the contract price, a letter was sent by Colonel Burton, an employee of Tuskegee, to J. A. Fernandes, purchasing agent for Tuskegee, informing him of the results of the meeting. After stating the amount agreed to be paid to Haynes, the letter stated that it was agreed that alternatives would be pursued to complete the unfinished 25% of the contract pertaining to the heating and air conditioning portion of the contract. On the date of the letter, the work of plaintiff Mays had been completed. The unit had been delivered and installed. The unfinished portion of the contract of Haynes was the connection of the unit to the power source. This work was not the responsibility of plaintiff Mays. Mays' work had been completed at the time Haynes was paid 75% of the contract price.

Haynes never returned to the job after receiving the payment. After several attempts to get Haynes to complete the job over several months, Tuskegee canceled the contract. It proceeded to complete the worth with its physical plant personnel.

Plaintiff attempted to secure payment from Haynes and subsequently contacted purchasing agent Fernandes. Fernandes requested a purchase order number which Mays did not have. Mays was never paid. Tuskegee connected the unit to the power source and used it.

There was additional testimony as to events transpiring subsequent to the deliv-

ery and installation of the unit by Mays. We fail to see the relevance of such testimony to the question of fraudulent misrepresentation of Tuskegee or to the alleged conspiracy of Tuskegee to secure the unit with the intent to avoid payment. Such testimony may have been relevant to the common counts, but we see no relevance to Count IV upon which the verdict was returned.

The essence of Count IV is that Tuskegee, acting through authorized agents Shell, Pinnock or Haynes or other unnamed agents, wilfully or recklessly without knowledge misrepresented to plaintiff that if he sold to Tuskegee a heating and cooling unit for a specific sum, that Tuskegee would pay for it. In the alternative, Count IV alleges that acting in concert with its agents Tuskegee conspired to obtain from plaintiff a heating and cooling unit with the intent not to pay for it.

Under either theory, recovery under Count IV requires plaintiff to establish by the evidence that Shell, Pinnock, Haynes or other unnamed agents of Tuskegee were acting within the line and scope of their authority, either actual or apparent, at the time material false representations were made to plaintiff. *City Stores Co. v. Williams,* 287 Ala. 385, 252 So.2d 45. The question of agency is for the jury if there is sufficient evidence. *Treadwell Ford, Inc. v. Wallace,* 49 Ala.App. 308, 271 So.2d 505.

We have heretofore set out portions of the evidence of Shell, Pinnock and Mays. If the testimony of Shell is accepted as true, his authority to contract with plaintiff came from his department head, Dr. Pinnock. There is no testimony or evidence that Pinnock possessed any authority from Tuskegee, either to contract or to delegate authority to contract. To the contrary, there were long-standing written rules from Tuskegee that all purchases must be made by and through the purchasing agent. Shell had been employed by Tuskegee for some three years in an instruc-

tional and development position. He was in no manner in an executive or policy-making position. Pinnock had been employed for some ten years and stated he was thoroughly familiar with the written and published instructions as to authority to make purchases and enter into contracts in behalf of Tuskegee. The evidence was that Pinnock had given Shell prior to this incident written instructions as to his duties and authority. Therefore, if Pinnock had no authority to contract for Tuskegee, he could give none to Shell.

Again accepting Shells' testimony as true, the alleged request of Pinnock that he supervise the work of Haynes in the performance of his contract did not grant any authority to Shell to purchase on behalf of Tuskegee a heating and cooling unit which Haynes had contracted to furnish and install. The testimony of Shell that Pinnock approved of an overrun in cost for plaintiff's unit and stated the difference could be raised, if done with authority to bind Tuskegee, would bind Tuskegee only for some $400.00.

A corporation must act through authorized agents. It is the duty of one dealing with a corporation to determine if those with whom he deals possess the requisite actual or apparent authority. *Johnson v. Shenandoah Life Insurance Co.,* 291 Ala. 389, 281 So.2d 636. An agent of a corporation cannot assume authority he is not given. His statement of agency and authority to one with whom he deals cannot bind the corporation. There is no evidence that plaintiff was told by Pinnock or Shell that they had authority to bind Tuskegee. An assumption by plaintiff of such authority is insufficient to carry its burden of proving agency. Plaintiff Mays had never done business with Tuskegee. It did not know either Shell or Pinnock prior to the time of the alleged contract of purchase. There is no evidence that Mays inquired about or knew the position and authority of either Shell or Pinnock. Plaintiff's representative came to Tuskegee at the request

of Shell who contacted plaintiff at the direction of Haynes. There is no evidence that plaintiff inquired of the identity or authority of Pinnock the one time he saw him. Delivery and installment were made without any inquiry by plaintiff. Shell accepted delivery and signed the contract individually without indication that he had authority from Tuskegee. No other employee of Tuskegee, named as defendant in the suit or denoted therein as unknown had any contact with plaintiff until after the alleged false representation and the delivery and installation of the unit. It was not until payment was sought by plaintiff that purchasing agent Fernandes was contacted.

 The evidence is that neither Pinnock or Shell had actual authority to contract for Tuskegee. Did they have apparent authority? The answer must be no. Tuskegee never held out to plaintiff that Shell or Pinnock were its agents to enter contracts. Their positions with Tuskegee were not such as to lead one to believe they or either of them had such authority. If they did, there is no evidence that plaintiff knew of their titles or positions. The doctrine of apparent authority is set out in *Automotive Acceptance Corp. v. Powell*, 45 Ala.App. 596, 234 So.2d 593. We see no need to restate it here. It is sufficient to say the evidence here does not meet the requirements of that doctrine.

It is therefore our opinion that there was no evidence that Shell, Pinnock or any other employee of Tuskegee, acting with actual or apparent authority from Tuskegee, made false representations to plaintiff with intent to defraud.

It is further our opinion that the evidence discloses no employee other than Shell and/or Pinnock made any representation to plaintiff which caused it to deliver and install the heating and cooling unit on the premises. Therefore, even if the evidence was sufficient for the jury to find that Shell and/or Pinnock were acting within their authority as agents of Tuskegee in their dealing with plaintiff, the judgment against Tuskegee alone could not stand.

When liability of a principal is vicarious and sought to be established through the tortious act of its agents, joined in the suit as defendants, a judgment against the principal alone is inconsistent and cannot stand. Title 7, Sec. 176(4); *Aggregate Limestone Co. v. Robison,* 276 Ala. 338, 161 So.2d 820.

We must further comment that that the charge that Tuskegee conspired with its agents to defraud plaintiff is not legally permissible. A corporation cannot conspire with its own agents acting within the line and scope of their employment. *Nelson Radio & Supply Co. v. Motorola, Inc.* (5th Cir. 1952), 200 F.2d 911, cert. den., 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356; 16 Am.Jur.2d Conspiracy, Sec. 47 pg. 151.

For the error of the trial court refusing to grant defendant Tuskegee's motion for directed verdict as to Count IV and the refusal of motion for new trial, the judgment of the trial court is reversed and the case remanded.

REVERSED AND REMANDED.

BRADLEY and HOLMES, JJ., concur.