Assured Growth Corporation, American Properties, Inc., and Diversified Securities, hereinafter called the corporations, appeal from a judgment from the Circuit Court of Covington County, Alabama. The original action was on account, for money had and received, and for breach of a written agreement. The corporations filed a plea in abatement challenging venue. The plea was denied after an evidentiary hearing. Thereafter, the court proceeded to hear the case without a jury. The court found for the plaintiff, Charles G. Tomberlin, and granted him damages in the amount of $7,000.00 plus $3,202.50 as interest. Reversed.
The corporations are domestic corporations with their principal offices in Birmingham, Alabama. American Properties, Inc. is the successor of Assured Growth Corporation through a name change in 1969. Assured Growth was organized in 1967 for the purpose of capitalizing and managing a life insurance company. Diversified Securities, Inc. was incorporated to sell and distribute stock in Assured Growth. *Page 920 
In 1968 Diversified undertook to sell an issue of stock of Assured Growth. Information concerning Assured Growth including assets, stockholders and directors, and its future plans was accumulated in a prospectus. Diversified hired Frank Mackin as an agent to sell Assured's stock and furnished him with the prospectus and stock subscription agreements to be executed by purchasers of stock.
Mackin became licensed as a securities salesman on January 8, 1968. On January 16, 1968, plaintiff Dr. Tomberlin subscribed for 120 shares of stock from Mackin. According to the prospectus and the subscription agreement. the price of a share of stock was $4.00. Tomberlin issued his check to Assured Growth through Mackin for 120 shares at $4.00 per share or in the sum of $480.00. He subsequently stopped payment on the check and the stock was not delivered. It is not clear why the sale was not completed.
On or about January 29, 1968, Mackin forwarded his last sale to the corporation. Efforts by the corporation thereafter to locate him were unsuccessful and the material furnished him as a salesman was not recovered.
The basis of the suit by plaintiff against the corporations was a stock subscription agreement executed between plaintiff and Frank Mackin dated March 4, 1968. According to the agreement, plaintiff purchased 2,500 shares of common stock of Assured Growth Corporation at $4.00 per share for $10,000.00 cash. Receipt of $10,000.00 was acknowledged by Frank Mackin as sales representative. The agreement signed by plaintiff acknowledged receipt of a copy of the prospectus issued by Assured Growth. The prospectus contained the following language:
 "No dealer, salesman or other person has been authorized to give any information or to make any representation other than those contained in this prospectus, and if given or made such information or representation must not be relied upon as having been authorized by the corporation."
The agreement further stated that Diversified Securities could reject the subscription and that deposit by Diversified of the funds paid would constitute acceptance.
It is upon this agreement that plaintiff brought suit against the corporations, though his own testimony was that he gave as consideration therefor not $10,000.00 as expressed therein, but $7,000.00. Plaintiff also admits that he gave a cashier's check made out to Mackin individually at Mackin's request. That check was subsequently cashed by Mackin in Jacksonville, Florida and never reached the corporation.
 On Denial Of Plea To Venue
After taking testimony on the plea of venue the trial court entered judgment. The judgment specifically stated that the court found that at the time of the filing of the suit the principal offices of the defendants were in Jefferson County, Alabama; that they were not doing business by agent in Covington County at the time of filing the suit nor at the time the cause of action accrued; that defendants had done business by agent in Covington County within 60 days prior to the date the cause of action was alleged to have accrued; that the agent was clothed with indicia of agency and had authority to bind defendants; that the agent absconded with all supplies of defendants and continued to hold himself out as agent up to and through the date the cause of action accrued, on March 4, 1968.
The court then found that the principle of apparent authority should be applied and that through such principle the court of Covington County had venue of the cases under the statute.
It is our opinion that the court erred in its judgment. *Page 921 
Sec. 60 of Title 7, Code of Alabama (1940) provides as pertinent to this action as follows:
 "[A] domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose. . . ."
The terms of the statute are plain and unambiguous. In order to be subject to suit within the boundaries of the trial forum, a domestic corporation must be in fact doing business there by agent at the specified times. The trial court in this instance found as a fact that neither at the time of bringing suit nor at the time the cause of action arose, were defendants doing business by agent in Covington County. Though we are not cited to, nor has our extensive research located, any case applying the theory of apparent authority or estoppel to venue, this court believes such theory to be inappropriate when applied to the venue statute.
The authority of the forum to entertain an action under the venue statute is founded upon the fact of agency — the express authority granted by the corporation to one to act for it in the doing of its business. The apparent authority of an agent is a substantive principle of law which arises by implication from the fact of agency and may determine the nature and measure of liability of a corporation to a third person. There is a clear distinction between the apparent authority of an agent and an apparent agent. A corporation cannot apparently be doing business by agent for purposes of venue. It is factually doing so or it is not. In this case the court found that the defendants had stopped doing business by agent in Covington County. That factual finding is not challenged. Termination of the agent's express authority to do business for the corporation does not necessarily terminate his apparent authority to bind the corporation and cause it to be liable at law for his acts done within the scope of that authority.Herndon v. Stanton, 221 Ala. 427, 129 So. 18; Treadwell Ford,Inc. v. Wallace, 49 Ala. App. 308, 271 So.2d 505; Restatement ofAgency 2d Chap. 5, Termination of Agency Powers. However, such liability must be litigated, upon plea of venue in a county where the corporation was represented by its authorized agent at the time of suit or at the time the cause of action arose.
In view of the finding of the trial court that defendants were not doing business in Covington County at the statutory time, the plea of venue should have been sustained, and the cause transferred to the proper forum. Title 7, Sec. 64 (1),Code; Rule 82 (d) ARCP.
 On The Merits
The case was appealed on both the ruling on the plea of venue, and on the final judgment granting plaintiff damages against defendants in the principal sum of $7,000.00 plus $3,202.50 interest. We find the trial court erred therein.
As we said hereinabove, the court found that the agency of Mackin had ended before the cause of action arose on March 4, 1976. Such being the fact, the liability of defendants could only be founded on the apparent authority of Mackin at the time the plaintiff executed the subscription agreement of March 4, 1968, and paid Mackin $7,000.00 by cashier's check. We have said that termination of agency does not necessarily terminate apparent authority of the agent. If, as in this case, the principal has given to an agent materials and supplies manifesting authority, and which is intended to be shown to third persons, and these are retained by the agent and exhibited to third persons, the termination of his agency does not prevent him from having apparent authority to those who have no notice of the termination of his authority. Restatementof Agency 2d, Chap. 5, Termination of Agency Powers, § 130. *Page 922 
However, the principles of notice of termination do not apply unless there was apparent authority to do the particular act complained of. In this case, the evidence is clear that Mackin never possessed apparent authority to execute the agreement upon which plaintiff bases his suit.
This court has said on more than one occasion that apparent authority does not arise from the acts of the agent, his statements of his authority or from what one thinks his authority may be. The apparent authority of an agent arises from the acts of the principal, either by omission or commission. Apparent authority is implied where the principal has actively or passively permitted the agent to appear to the third person to have the authority to perform an act.Automotive Acceptance Corp. v. Powell, 45 Ala. App. 596,234 So.2d 593; Owens v. Wood, 43 Ala. App. 366, 190 So.2d 734.
No appearance or indicia of authority to perform the act complained of by plaintiff were shown by the evidence in this case.
To the contrary, the indicia of Mackin's authority were express in the prospectus issued by Assured Growth and Diversified Securities. The limits of his authority were implicit in the stock subscription agreement which plaintiff signed and which he attached to his complaint. It was plainly stated therein that the price of the stock was $4.00 per share and that the acceptance by the corporation was the deposit of the price in its bank. The testimony of plaintiff that he executed an agreement to purchase $10,000.00 worth of stock for $7,000.00 is conclusive against him. The evidence is devoid of an act, express or implied, by defendants which could give color to any authority of Mackin to accept a cashier's check made to him individually for $7,000.00 as the purchase price of 2500 shares of stock at $4.00 per share.
The evidence of plaintiff that he entered a contract with Mackin to assist him in the sale of stock and insurance in Houston County, availeth him nothing. Again, there is no evidence that defendants knew of or authorized such a contract. Plaintiff testified that he made an inquiry of some person in the home office of defendants as to whether Mackin was in fact an agent. There was no evidence of inquiry as to the extent of his authority or whether he was authorized to make such a deal.
The purport of plaintiff's case is that he was "taken" by Mackin. Such seems to be true, but his error was in believing the representations of Mackin which were totally outside of his authority, express or apparent.
The case is reversed and rendered in favor of defendants.
REVERSED AND RENDERED.
BRADLEY and HOLMES, JJ., concur.