The defendants are Police Chief Dempsey Marcum of the City of Northport and the City of Northport itself. The plaintiff, Howard Williams, who filed this pro se appeal from a summary judgment for the defendants, was employed by the City of Northport as a police officer. We find that the "final judgment" entered in the circuit court, incorporating findings of fact and conclusions of law, adequately disposes of each issue presented here by the plaintiff, except the issues of (1) a conspiracy between Chief Marcum and the City of Northport, and (2) invasion of privacy, which issues were not raised at the trial level. This Court will not consider an issue that was not pleaded or otherwise raised at the trial court level. Smiths Water Authority v. City of PhenixCity, 436 So.2d 827 (Ala. 1983); Chatman v. City of Prichard,431 So.2d 532 (Ala. 1983). See also, Ammlung v. City ofChester, 494 F.2d 811, 814 (3rd Cir. 1974), which applied the waiver rule in a conspiracy case (finding "no allegations of a combination, agreement, or understanding among all or between any of the defendants"). As to the conspiracy issue, Williams's complaint alleges:
 "[D]efendant Marcum, acting under color of law and in his official capacity as Chief of Police of Northport Police Department has for such period of time engaged and continues to engage in a common plan, scheme and design to commit the following wrongs against the plaintiff, and has, as set out hereinabove, committed said wrongs. . . ."
Though the phrase "common plan, scheme and design" is used in Williams's complaint, his complaint does not allege that the two defendants acted together in regard to any such "plan," "scheme," or "design." In Hursey v. City of Mobile,406 So.2d 397, 398 (Ala. 1981), the Court held that the following statement did not allege any combination between the City of Mobile and Dr. Naman: "by refusing to compel Dr. Naman to cease and desist from the unlawful use of his property, the City conspired with Dr. Naman in his continuing unlawful use of his property." In upholding the defendant City's summary judgment, the Court wrote:
 "The second cause of action, the conspiracy claim, fails to allege any combination between the City and Dr. Naman (see Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251 (1953)); rather, it merely alleges unlawful use of property by an adjoining landowner. Any cause of action which the Hurseys may have under the stated set of facts would be against Dr. Naman."
Elsewhere in Williams's complaint he alleges that the City of Northport has liability predicated upon the "doctrine of respondeat superior." Although a corporation "may be liable for damage to a third person resulting from a conspiracy where two *Page 475 
or more of its agents participated in the conspiracy,"Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 306 (Ala. 1986), there is no "conspiracy" where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior through the acts of the agent with whom it allegedly conspired. Tuskegee Institute v. May RefrigerationCo., 57 Ala. App. 344, 328 So.2d 598 (1976), affirmed in part and reversed in part, 344 So.2d 156 (Ala. 1977).
As to the second claim raised here but not dealt with by the trial court's judgment, we find that there was nothing in any pleading concerning the right of privacy. Further, we have been unable to find in the record even a suggestion that this theory or claim was presented to the trial court.
Justice Benjamin N. Cardozo, in The Nature of the JudicialProcess (1921), at page 35, wrote: "[T]he sordid controversies of litigants are the stuff out of which great and shining truths will ultimately be shaped." Any "great and shining truths" that can be shaped from the controversy before us, involving, as it does, allegations of biting off a woman's nipple, domestic violence, breaking down a door to gain entrance into a police officer's abode and a resulting fatal shooting, a corpse in a police officer's front yard, and intrigue and politics within a police department and a city government, have been shaped by the trial court in its "final judgment."
While we do not adopt the trial court's order as a correct statement of the law in regard to all its propositions, we nevertheless quote that order here and we consider it to adequately deal with the remaining issues:
 "Final Judgment
"This matter came before the Court on the defendants' Motion for Summary Judgment, and after hearing the arguments of counsel and reviewing the items on file, the Court concludes that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law. The Court's rationale with regard to each incident alleged in the complaint is set out hereinbelow.
 "Findings of Fact and [Conclusions of] Law
"On June 7, 1982, a letter of reprimand was written by defendant Marcum. The plaintiff alleges that defendant Marcum unlawfully placed a letter of reprimand in his personnel file, causing him damage. The plaintiff's complaint characterizes this conduct as libel, outrage, interference with contractual relations and a violation of 42 U.S.C. § 1983.
"This lawsuit was not filed until August 30, 1985. These claims are barred by the applicable statute of limitations [Ala. Code (1975), § 6-2-39(4), (5) (repealed)], which states that actions for 'libel or slander' and actions for . . . 'any injury to the person or rights of another not arising from contract' shall be commenced within one year. Plaintiff's attorney conceded the fact that this statute barred the action [insofar as it claimed libel, 'outrage,' interference with contractual relations, or § 1983 violations based upon Marcum's actions in the year 1982].
"In 1983, a background search and report was made. The plaintiff alleges that defendant Marcum made a background search on the plaintiff beginning April 1, 1983, and that false reports based on this investigation were made on several occasions in 1983. Again, the plaintiff's complaint appears to characterize this conduct as libel, outrage, interference with contractual relations, and a violation of42 U.S.C. § 1983. As the plaintiff's attorney conceded at oral argument, these claims are . . . barred by the applicable statutes of limitations [insofar as they are based upon Marcum's actions in the year 1983].
"On September 4, 1984, a press release was given by defendant Marcum. The plaintiff alleges that defendant Marcum issued a false press release regarding a shooting incident involving the plaintiff.
"No claim was filed against the city regarding this matter until August 30, 1985. Thus, the claims against defendant City of Northport are barred by Ala. Code (1975), *Page 476 
§ 11-47-23 [the six-month municipal statute of nonclaims]. . . . The plaintiff's attorney conceded this at oral argument. . ..
"With regard to defendant Marcum, the libel claim is without merit because the press release is true. Truth constitutes an absolute defense to a claim of defamation.Liberty Loan Corp. v. Mizell, 410 So.2d 45 (Ala. 1982);Ala. Code (1975), § 6-5-183. The release was expressly based on a preliminary investigation, and the plaintiff admitted in his deposition that the press release accurately reflected the contents of the preliminary investigation. Cf. D'Andrea v.Adams, 626 F.2d 469 (5th Cir. 1980) (n. 2, applying Alabama law) [cert. denied, 450 U.S. 919, 101 S.Ct. 1365,67 L.Ed.2d 345 (1981)].
"Obviously, if the statement is true, it cannot be grounds for the tort of outrage. Even if the statement was false, it would not be sufficient for such an action because it is not so outrageous and extreme as to go beyond all possible bounds of decency and it would not be regarded as atrocious and utterly intolerable in a civilized society. Franklin v. Ansell,Inc., 489 So.2d 565 (Ala. 1986); Surrency v. Harbison,489 So.2d 1097 (Ala. 1986); McCluskey v. Unicare Health Facility,Inc., 484 So.2d 398 (Ala. 1986). [See American Road Serv. Co.v. Inmon, 394 So.2d 361 (Ala. 1981).]
"There was no breach of the contract between plaintiff and the City of Northport for purposes of the interference claim by virtue of this press release. The plaintiff suffered no loss in pay or any other benefit. Moreover, defendant Marcum cannot be liable for interference because his supervisory capacity with the City of Northport prevents him from being a third party. See, e.g., Newman v. Legal Services Corp.,628 F. Supp. 535 (D.D.C. 1986).
"Finally, defendant Marcum cannot be liable under § 1983 for even a defamatory press release because the plaintiff suffered no loss of tangible state-guaranteed entitlements as a result of the release. Hardiman v. Jefferson Co. Board of Ed.,709 F.2d 635 (11th Cir. 1983).
"On March 8, 1985, a suspension occurred because of an improper uniform. The plaintiff alleges that defendant Marcum suspended him and deducted a day's pay.
"The evidence is uncontroverted that the plaintiff violated uniform regulations on March 8, 1985, and that defendant Marcum initiated disciplinary action therefor. This disciplinary action was almost immediately rescinded by the city administrator. It is also clear that the plaintiff never actually lost any pay whatsoever and that the plaintiff, in effect, received a day off with pay on March 8, 1985, as opposed to a suspension without pay.
"The defendants' conduct obviously does not constitute libel because there was no publication of defamatory material. It does not constitute [the tort of] intentional infliction of emotional distress because it is not outrageous conduct. It does not constitute [the tort of] interference with contractual relations because there is no interference by a third party. Finally, it is not a violation of § 1983 because the plaintiff was not denied due process and he suffered no damage. Hardiman v. Jefferson Co. Board of Ed., supra (suspension with pay does not constitute a § 1983 violation).
"On June 2, 1986, a letter to a vest manufacturer about an incident was written. In his amended complaint, the plaintiff alleges that defendant Marcum sent a letter to a bullet-proof vest manufacturer regarding another shooting incident involving the plaintiff. He further states that the letter was false wherein it stated that the shooting incident was a fabricated hoax and that the plaintiff was not wearing a bullet-proof vest at the time of the shooting. The pertinent portion of the letter that the plaintiff and his attorney contended was false is set out in full as follows:
 " 'And in my professional opinion, based on my knowledge of Officer Williams and the available information of the case, there is reasonable cause to believe the incident was a fabricated hoax, and I sincerely doubt that officer Williams was wearing the vest when it was shot as reported.' *Page 477 
"As indicated by the wording of the letter itself, the statement made the basis of this claim was Chief Marcum's opinion. The law is clear that an opinion can never be false. Because a statement must be false to be actionable defamation, an opinion is simply not actionable defamation.Lewis v. Time, Inc., 710 F.2d 549 (9th Cir. 1983). Even if it could be false, the plaintiff was a public figure and a public official, given that he was a police officer and a candidate for the office of Sheriff of Tuscaloosa County. Hence, in order to avoid a summary judgment, the plaintiff was required to produce clear and convincing evidence of actual malice.Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,91 L.Ed.2d 202 (1986). The plaintiff has failed to meet this burden.
"This statement of opinion did not constitute outrageous conduct under American Road Serv. Co. v. Inmon., 394 So.2d 361
(Ala. 1980). There is no showing of interference with contractual relations by a third party and the plaintiff's amended complaint does not [allege such interference]. There is no violation of § 1983 by virtue of this letter. Hardiman v.Jefferson Co. Board of Ed., supra.
 "Miscellaneous Claims
"The plaintiff contends in his complaint that he had an implied contract with the city [that it would not] 'rehire' Chief Marcum after firing him in 1984, and that this contract was breached. However, plaintiff admitted in his deposition that there was no such contract. Even if he had not, it is uncontroverted that defendant Marcum was never fired and, therefore, the city's duty to perform under the alleged contract never arose.
"The plaintiff also contended that he had been ordered to utilize 'an old dilapidated, unsafe police vehicle' while on police patrol. He asserts that this constitutes outrageous conduct. Liability for this tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. It only extends to conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.American Road Serv. Co. v. Inmon, supra, at 368. The alleged conduct clearly does not meet this standard.
"For the reasons stated hereinabove, the defendants are entitled to summary judgment on all claims and the plaintiff's complaint and amended complaint are hereby dismissed."
The trial court did not err in granting the defendants' summary judgment, and that judgment is affirmed.
AFFIRMED.
MADDOX, BEATTY, and ADAMS, JJ., concur.
ALMON, J., concurs in the result.